[Crim. No. 26523. Second Dist., Div. Five. July 29, 1975.]

In re VALERIE E., a Person Coming Under the Juvenile Court Law.
CLARENCE E. CABELL, as Acting Chief Probation Officer, etc.,
Plaintiff and Respondent, v.
VALERIE E., Defendant and Appellant.

214

## COUNSEL

Richard S. Buckley, Public Defender, John J. Gibbons, Dean Gits, Saul M. Ferster and Laurence M. Sarnoff, Deputy Public Defenders, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Howard J. Schwab and Ellen Birnbaum Kehr, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

HASTINGS, J.—A petition was filed in the juvenile court alleging that the minor, Valerie E., came within the provisions of Welfare and Institutions Code section 602, in that she allegedly committed battery (Pen. Code, § 242) against two police officers (paragraphs I and II). Defendant's motion for pretrial discovery was denied. The court found the allegations in the petition to be true and declared defendant a ward of the court under Welfare and Institutions Code section 602. Defendant

was placed "home on probation," in the home of her mother. Defendant appeals, contending that the trial court abused its discretion in denying her discovery motion.

On June 22, 1974, at approximately 6:15 p.m., Officer Macis observed a blue Ford sedan stopped at a stop sign at 28th Street and Central Avenue. Defendant was driving the automobile and had a male passenger. The officer noted that both of these individuals were seated extremely low in the car. As they crossed the intersection the male passenger disappeared from sight and defendant turned her head away from the officer. The officer also noticed a hole in the trunk where the lock would be located.

The officer ran a check on the license number of the car and discovered that the vehicle was registered to an individual with a Spanish surname who lived in a different part of the city. The officer started following the automobile during which time he saw defendant make two turns without signalling. Defendant pulled into a driveway on Adams Boulevard and the officer pulled up behind defendant as she was getting out of the car. Defendant was walking toward her house when the officer called to her to stop. She replied, "What the mutha' fucker are you stopping me for? You stopped me because I am a nigger." Officer Macis testified that he tried to calm her down and asked for her driver's license. Defendant walked away. The officer told her to stop and again asked to see her driver's license. She walked over to the passenger side of the car, reached in, removed a wallet, and told the officer, "I ain't giving you no mutha' fuckin' driver's license." Defendant then started walking away again. As the officer approached defendant to take her into custody, she threw her wallet into the street and started "fighting and swinging and carrying on and cursing." Macis grabbed ahold of her and started to handcuff her. She resisted and Macis attempted to place the "bar-arm control" on defendant in an effort to render her unconscious. She got loose and was "kicking" and "punching" at the officer. Officer Macis' partner, Officer Gauba, came to his aid, and they placed the handcuffs on defendant and put her into the police vehicle.

When Officer Macis was walking with defendant into the police station, she pulled away. Defendant, being double jointed, then put her hands over her head, catching Officer Macis' thumb between the cuffs. Macis called for help and his partner helped him release his thumb. During this time defendant was kicking and screaming.

At the adjudication proceedings defendant's next-door neighbor, Mrs. Manuel, the passenger, Mingo Woods, and defendant herself gave essentially the same testimony as to what happened at the time of defendant's arrest. Their version of the events is as follows: After the police vehicle pulled in behind defendant, the officer hollered, "Hey," got out of the car, pulled out his night stick, and hit the button to unfasten his holster. Defendant turned around and asked him what she had done and why he was stopping her. The officer did not answer and defendant told him that she wanted to go get her mother. The officer then asked for her driver's license. Defendant replied that she was not going to give him her license until he told her the reason for his stopping her. She said that she wanted her mother. As she started walking down the sidewalk the officer grabbed her by her arms. He jerked so hard that her wallet and one of her shoes went into the street. Defendant tried to fight back. The officers then forcibly handcuffed her and shoved her into the police vehicle. The choking hurt defendant and in the police car she was spitting blood.

■ Prior to the adjudication hearing, defense counsel sought to discover evidence of the officers' propensity for violence. Specifically, he moved for the production of records involving all persons who had filed complaints against the officers here involved for unnecessary acts of aggressive behavior, violence, excessive force or for acts demonstrating racial and/or ethnic prejudice. In his declaration, defense counsel stated that he "is informed and believes" that persons ". . . made [such] complaints" and that such records "are material and relevant to the trial of said action" in that "defense expects to show that if in fact minor used force against police officers, that such force was in defense of [her] person against acts of aggression and excessive and illegal force used by police officers against her. . . . Such information would be used . . . to locate and call witnesses to testify that . . . officer(s) Macis and Gauba (each) have a character trait . . . for engaging in unnecessary acts of aggressive behavior. . . ."

After argument, the trial court found that the information requested was relevant; however, it denied the motion because defense counsel could not state with any certainty that there had in fact been any prior complaints.

Defendant argues that, although she could not identify the exact *content* of the material sought, her motion for discovery was not a mere "fishing expedition" since she could identify the *type* of material desired.

In *Pitchess* v. *Superior Court,* 11 Cal.3d 531 [113 Cal.Rptr. 897, 522 P.2d 305], defendant, charged with battery on a peace officer, sought to discover investigative files of law enforcement agencies regarding complaints against the peace officers involved concerning their use of excessive force in order that he might prove the aggressive character of the officers pursuant to Evidence Code section 1103.[1] In support of his motion, defendant filed affidavits indicating that at least four named persons had complained against the officers for misconduct. In holding that the trial court did not abuse its discretion in granting defendant's motion the court held that an accused in a criminal proceeding may compel discovery "by demonstrating that the requested information will facilitate the ascertainment of the facts and a fair trial. [Citations.] The requisite showing may be satisfied by general allegations which establish some cause for discovery other than 'a mere desire for the benefit of all information which has been obtained by the People in their investigation of the crime.' . . . [T]he information which defendant seeks may have considerable significance to the preparation of his defense, and the documents have been requested with adequate specificity to preclude the possibility that defendant is engaging in a 'fishing expedition.' " (*Id.* at pp. 536-538.)

■ A defendant's motion for discovery must describe the requested information with some degree of specificity and must be sustained by plausible justification. (*Ballard* v. *Superior Court,* 64 Cal.2d 159, 167 [49 Cal.Rptr. 302, 410 P.2d 838, 18 A.L.R.3d 1416].) As former Chief Justice Traynor has written, "A showing, however, that the defendant cannot readily obtain the information through his own efforts will ordinarily entitle him to pretrial knowledge of any unprivileged evidence, or information that might lead to the discovery of evidence, if it appears reasonable that such knowledge will assist him in preparing his defense." (Traynor, *Ground Lost and Found in Criminal Discovery* (1964) 39 N.Y.U.L.Rev. 228, 244.)

■ In the present case, defendant did not have the names of any prior citizen complainants and was not aware of any complaints that had

[1]Section 1103 provides in pertinent part:

"(1) In a criminal action, evidence of the character or a trait of character (in the form of an opinion, evidence of reputation, or evidence of specific instances of conduct) of the victim of the crime for which the defendant is being prosecuted is not made inadmissible by Section 1101 if such evidence is:

(a) Offered by the defendant to prove conduct of the victim in conformity with such character or trait of character.

(b) Offered by the prosecution to rebut evidence adduced by the defendant under subdivision (a)."

been made against the police officers involved herein. However, proof of the existence of the sought material is not a prerequisite to the granting of a discovery motion. (*Hill* v. *Superior Court,* 10 Cal.3d 812, 817 [112 Cal.Rptr. 257, 518 P.2d 1353]; *Cash* v. *Superior Court,* 53 Cal.2d 72, 75-76 [346 P.2d 407].) ■ A requirement of such proof would, in many cases, deny the accused the benefit of relevant and material evidence. Defendant should not be required to produce the names of specific citizen complainants. Ordinarily, an accused would never be in a position to know what complaints, if any, had been filed against certain police officers in the community. To make such a showing a condition precedent to production would make an accused's rights "dependent upon the highly fortuitous circumstance" (see *People* v. *Chapman,* 52 Cal.2d 95, 98 [338 P.2d 428]) of the accused's detailed knowledge as to the contents of the police officers' personnel files.

■ In the present case defendant showed more than a "mere desire for the benefit of all information"; she clearly specified the exact material sought, i.e., all information regarding citizen complaints for excessive force against the two police officers involved in her arrest. This was sufficient to justify discovery.

Furthermore, there can be no doubt that in this case the officers' disciplinary records would be relevant and admissible under Evidence Code section 1103, and it is apparent that defendant could not "readily obtain the information through [her] own efforts." (Traynor, *Ground Lost and Found in Criminal Discovery, supra.*) Defendant thus showed good cause and the trial court erred in denying her discovery motion.

■ During the argument on the motion, the People prematurely asserted a privilege of confidentiality of records pursuant to Evidence Code section 1040. This privilege is conditional: the trial court must weigh whether the "necessity for preserving the confidentiality of the information" outweighs the "necessity for disclosure in the interest of justice." (Evid. Code, § 1040; *Pitchess* v. *Superior Court, supra,* 11 Cal.3d 531, 538-539.) This was not done in the instant case. The trial court found that defendant had not made a sufficient showing to justify discovery and therefore privilege was not in issue. The People may now seek to establish the applicability of the conditional privilege declared in Evidence Code section 1040, and the decision on the propriety of the motion and its attendant consequences under Evidence Code section

1042, subdivision (a)[2] shall be decided by the trial court according to the standards set forth in *Pitchess* v. *Superior Court, supra.*

The judgment is reversed and the cause is remanded for a hearing on the applicability of the conditional privilege, if so raised.

Kaus, P. J., and Stephens, J., concurred.

---

[2]Section 1042, subdivision (a), states: "Except where disclosure is forbidden by an act of the Congress of the United States, if a claim of privilege under this article by the state or a public entity in this state is sustained in a criminal proceeding, the presiding officer shall make such order or finding of fact adverse to the public entity bringing the proceeding as is required by law upon any issue in the proceeding to which the privileged information is material."