[Civ. No. 41421. First Dist., Div. One. Nov. 21, 1977.]

FRANK LEROY SAULTER, Petitioner, v.
THE MUNICIPAL COURT FOR THE OAKLAND-PIEDMONT
JUDICIAL DISTRICT OF ALAMEDA COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

COUNSEL

Sullivan, Nakahara & Du Bois and Dennis M. Sullivan for Petitioner.

No appearance for Respondent.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Clifford K. Thompson, Jr., W. Eric Collins and Martin S. Kaye, Deputy Attorneys General, for Real Party in Interest.

OPINION

SIMS, J.—An alternative writ of mandate was granted in these proceedings to review the actions of respondent court in connection with the petitioner's motions for discovery. Petitioner is charged by an amended complaint with attempted murder of Officer Munoz of the Oakland Police Department, with two counts of possession of firearms by an ex-felon (Pen. Code, §§ 12021 and 12500), with aggravating armed with and use of a firearm and an intentional injury allegations, and with

five prior felony convictions. On October 8, 1976, by a supplemental motion for discovery, his attorney alleged that the defense in the case would rest heavily upon a claim of self-defense by the defendant, and that Officer Munoz, his fellow officer, Vaughn, and Special Agent Newberry of the Federal Alcohol, Tobacco and Firearms Division utilized illegal tactics and excessive force and violence in executing a search warrant and did not comply with the provisions of section 1531 of the Penal Code, and that as a result, the defendant acted to protect his own life and property and without knowledge that the individuals breaking into his house were in fact police officers and agents. He sought official records concerning the prior conduct of those officers, and reports of the incident itself. The latter records were furnished, but the magistrate denied petitioner the other relief he sought after examining the police department records of the first two officers.

The petitioner contends that the trial court erred on October 12, 1976, when it denied its motion for discovery, on November 5, 1976, when after examining the records of the Oakland Police Department *in camera,* it ruled that the material concerning the first two officers was irrelevant, and on November 15, 1976, when it refused to order the prosecution to produce records concerning the federal officer, and indicated that it would not authorize a subpoena duces tecum for those records.

The People contend that the court properly denied discovery of the federal records because they were not in the prosecution's possession or under their control. They originally also complained that the petitioner had made an insufficient record because he had not furnished this court with a record of the hearings at which the magistrate made his rulings, nor with the material which he examined *in camera* and found irrelevant. They also claimed there was no showing that the matter was not privileged under section 1040 of the Evidence Code. The record has been augmented with a reporter's transcript of the hearings on the petitioner's motion, and with the sealed records examined by the magistrate.

We conclude that the magistrate erred (1) in requiring the accused to take the initiative in securing information available to the prosecution when the accused had shown plausible justification for the discovery of the information, and had described it with sufficient particularity; (2) in determining the relevancy and materiality of the material in the personnel records on the sole basis of the merits of the charges as revealed by those records; (3) in finding that the federal records were unavailable to the prosecution; and (4) in denying the petitioner either

an order or a subpoena duces tecum for the production of the federal records. Parenthetically, we note (1) that the extraordinary writ may have been improvidently granted in this case by virtue of the availability of appeal and supersedeas, and (2) belatedly, upon examination of the whole record, that upon proper original showing the writ might have been denied because the petitioner's supplemental request for discovery was not interposed in a timely manner before the magistrate.

Preliminarily we note that on December 1, 1976, the petitioner filed a petition with the superior court seeking relief. On February 7, 1977, the petition for a writ of mandate was denied. On April 6, 1977, the petitioner appealed from that judgment. On April 19, 1977, the municipal court indicated it was going to reset the preliminary hearing, which had been suspended pending disposition of petitioner's motion. On April 29, that court ordered the matter set for further preliminary hearing on May 24, 1977. The accused then filed the instant proceedings on May 19, 1977. The rulings were subject to review in the pending appeal. (See *Long* v. *Municipal Court* (1976) 58 Cal.App.3d 382 [128 Cal.Rptr. 918]; *Caldwell* v. *Municipal Court* (1976) 58 Cal.App.3d 377 [129 Cal.Rptr. 834]; *Ross* v. *Municipal Court* (1975) 49 Cal.App.3d 575, 576 [122 Cal.Rptr. 807]; *Burrus* v. *Municipal Court* (1973) 36 Cal.App.3d 233, 238 [111 Cal.Rptr. 539]; and 5 Witkin, Cal. Procedure (2d ed. 1971) Extraordinary Writs, § 178, p. 3938. Cf. *id.*, § 42.) In view of the questions raised in the case last cited, the petitioner followed both routes to this court, rather than seeking a writ of supersedeas to stay the preliminary hearing pending disposition of his appeal. In the hope the matter could be handled more expeditiously, and no procedural objection having been made by the People, we granted the alternative writ. The appeal was dismissed at the request of the defendant after these proceedings were submitted. Unfortunately delays in securing the records reviewed by the magistrate *in camera* have prolonged the proceedings. The matter having been briefed and submitted with the concurrence of the parties, we rule on the merits without approving of the irregular procedure followed. (See *People* v. *Superior Court* (1937) 10 Cal.2d 288, 290 [73 P.2d 1221]. Note *Dulaney* v. *Municipal Court* (1974) 11 Cal.3d 77, 81 [112 Cal.Rptr. 777, 520 P.2d 1]; *Mills* v. *Municipal Court* (1973) 10 Cal.3d 288, 294 [110 Cal.Rptr. 329, 515 P.2d 273]; and *Castaneda* v. *Municipal Court* (1972) 25 Cal.App.3d 588, 591-592 [102 Cal.Rptr. 230].)

## I

The motion presented October 12, 1976, sought an order requiring the prosecution to furnish the petitioner with the following records:

(a) All records and reports of the Oakland Police Department of complaints of misconduct in the execution of search warrants, or the use of excessive force or violence pertaining to the following Oakland Police officers: Charles Munoz and Harry Vaughn.

(b) The records and/or reports of any internal police investigation by the Oakland Police Department into the circumstances surrounding the execution of the search warrant in this case, as well as the shootings that took place.

(c) Any and all records and/or reports of persons who have filed complaints against Oakland Police Officers Harry Vaughn or Charles Munoz for unnecessary acts of aggressive behavior, violence, or excessive force.

(d) All records and/or reports of the Federal Alcohol, Tobacco and Firearms Bureau concerning complaints by any persons against Special Agent Newberry for unnecessary acts of aggressive behavior, violence, or excessive force.

(e) Any and all records and/or reports of the Bureau of Alcohol, Tobacco and Firearms concerning complaints or reports by any persons against Special Agent Newberry for illegal tactics used in the execution of search warrants.

(f) Any records and/or reports of the Bureau of Alcohol, Tobacco and Firearms concerning an internal investigation by that bureau into the circumstances surrounding the execution of the search warrant in this case and the shootings involved.

It was supported by the declaration of his attorney that has been outlined above.

That motion was denied and the court suggested that the petitioner attempt to secure the records by subpoena duces tecum. ██ The court erred in denying the motion insofar as the records sought were in the possession or under the control of the prosecution. In *Pitchess* v. *Superior Court* (1974) 11 Cal.3d 531 [113 Cal.Rptr. 897, 522 P.2d 305], the court commented on a similar ruling as follows: "At the threshold we observe that the case comes to us by a somewhat convoluted route. The trial court ordered the prosecution to obtain the records from the sheriff. When the sheriff refused to produce the information, the prosecutor

should have invoked process of the court; instead, the burden of so moving was imposed upon the defendant, here the real party in interest." (11 Cal.3d at pp. 534-535.)

The declaration supporting the motion and the motion itself described the requested information with sufficient specificity and it was sustained by a plausible justification. (See Evid. Code, § 1103; *Pitchess* v. *Superior Court, supra,* 11 Cal.3d at pp. 535-538; *Dell M.* v. *Superior Court* (1971) 70 Cal.App.3d 782, 785 [139 Cal.Rptr. 149]; *People* v. *Superior Court (McKunes)* (1976) 62 Cal.App.3d 853, 855-856 [133 Cal.Rptr. 440]; *Kelvin L.* v. *Superior Court* (1976) 62 Cal.App.3d 823, 828-830 [133 Cal.Rptr. 325]; *Long* v. *Municipal Court, supra,* 58 Cal.App.3d 382, 386; *Caldwell* v. *Municipal Court, supra,* 58 Cal.App.3d 377, 380; *Hinojosa* v. *Superior Court* (1976) 55 Cal.App.3d 692, 696-697 [127 Cal.Rptr. 664]; and *In re Valerie E.* (1975) 50 Cal.App.3d 213, 217-219 [123 Cal.Rptr. 242].)

## II

Any error in the foregoing proceedings was cured insofar as police department records were concerned by the production of those records on return to a subpoena duces tecum. Those records were produced by a city attorney who claimed that the records were privileged under section 1040 of the Evidence Code. It was agreed that they would be inspected by the court for that purpose and the matter was continued for further hearing.

In *Pitchess* v. *Superior Court, supra,* the court held, "Evidence Code section 1040, therefore, represents the exclusive means by which a public entity may assert a claim of governmental privilege based on the necessity for secrecy." (11 Cal.3d at p. 540.) The court observed, "Evidence Code section 1040 now provides public entities with a formal privilege to refuse to divulge official information when the need to maintain its secrecy is greater than the need for disclosure in the interests of justice. The privilege is conditional: 'The judge must determine in each instance the consequences to the public of disclosure and the consequences to the litigant of nondisclosure and then decide which outweighs the other.' (Assem. Com. on Judiciary, comment to Evid. Code, § 1040.) [¶] The privilege attaching to official information clearly encompasses the documents which defendant wishes to discover. The records of the sheriff's department were compiled on the basis of statements made in confidence to members of the administrative services bureau, and investigations conducted pursuant thereto." (*Id.,* at

pp. 538-539. See also *Shepherd* v. *Superior Court* (1976) 17 Cal.3d 107, 123-124 [130 Cal.Rptr. 257, 550 P.2d 161]; *People* v. *Superior Court (McKunes), supra,* 62 Cal.App.3d 853, 856; and *In re Valerie E., supra,* 50 Cal.App.3d 213, 219.)

In *Kelvin L.* v. *Superior Court, supra,* the court pointed out, "The privilege is not an unmixed blessing to law enforcement, however, but may be 'exercised only subject to the adverse consequences provided for in section 1042, subdivision (a), of the Evidence Code." (62 Cal.App.3d at p. 830, fn. omitted. See also *Pitchess* v. *Superior Court, supra,* 11 Cal.3d 531, 539 and 540; *Dell M.* v. *Superior Court, supra,* 70 Cal.App.3d 782, 786; and *In re Valerie E., supra,* 50 Cal.App.3d 213, 220, fn. 2 and accompanying text.) Section 1042, subdivision (a) provides: "(a) Except where disclosure is forbidden by an act of the Congress of the United States, if a claim of privilege under this article by the state or a public entity in this state is sustained in a criminal proceeding, the presiding officer shall make such order or finding of fact adverse to the public entity bringing the proceeding as is required by law upon any issue in the proceeding to which the privileged information is material."

The magistrate did not, however, directly weigh the consequences to the public of disclosure and the consequences to the litigant of nondisclosure and decide which outweighed the other. After considering the files it ruled as follows: "The Court finds that there is no incident involving either officer in those files which relates to a Complaint of illegal tactics or excessive force or excessive violence in connection with the execution of a search warrant. And in fact there is no incident related therein which in any way mentions or concerns an incident where a search warrant was involved. [¶] The Court further finds that the complaints therein were either found to be unfounded or the investigation concluded that the officer should be exonerated. And after reading the files this Court agrees with the conclusion reached by the Chief of Police. [¶] The Court further finds that a study of the file by defense counsel would not lead to discoverable information, and there is no information contained therein which the refusal—the language is clumsy—but which the refusal of such information to the Defendant would not in any way deny the Defendant of a fair trial or a fair preliminary examination. [¶] The Court orders that Oakland Police Department need not reveal this information to defense counsel." The magistrate acquiesced in defense counsel's appraisal that there had been certain complaints for the use of force and violence lodged against each

officer at various times, but not in connection with search warrants,[1] and that all of the complaints for force and violence against the officers would be irrelevant and immaterial to the trial or the preliminary hearing. The attorney then specifically asked for the dates of the complaints and the names and addresses of any and all complainants so he could speak to them and determine whether or not the defense thought the incidents would be material or relevant. The court denied the request.

In *Kelvin L.* v. *Superior Court, supra,* the court examined the applicable records *in camera* and found, as did the juvenile court which had denied the accused's discovery motion, that there were two complaints of use of excessive force against one of the arresting officers, one of which was "not sustained." On the other he was exonerated. A second officer had one complaint which was found "not sustained." The trial court, as in this case, concluded that the evidence was neither relevant nor material to the issues in the case and denied the motion for discovery. At the same time it sustained the custodian's claim of privilege. The court in granting a peremptory writ stated: "Nor does the fact that the previous charges against the officers were not substantiated render them irrelevant for purposes of discovery. As to the two charges which were 'not sustained,' there were no witnesses to the event other than the complaining citizen and the officer. The department concluded that it could not fully resolve the issue on the basis of such evidence. Surely we cannot say that an interview with these complainants would be irrelevant to preparation of petitioner's defense. As to the charge of which Brogelman was exonerated, there were three civilian witnesses to that incident who contradicted the citizen who lodged the complaint. Presumably they will give petitioner's counsel the same version they told police investigators. If they do, counsel will undoubtedly choose not to use their testimony. [¶] The fact remains that under our constitutional system the burden for preparing a criminal defendant's case rests with his counsel, not with the police department. That burden cannot be properly discharged unless counsel has direct access to potential witnesses, for it is counsel who must decide if they can aid his client, not the police department's internal affairs division, however sincere and well motivated the latter may be." (62 Cal.App.3d at p. 829. See also *Long* v. *Municipal Court, supra,* 58 Cal.App.3d 382, 386.)

---

[1] Our examination of the files sustains the magistrate's finding that there was no complaint against either officer with respect to his conduct in the execution of a search warrant. There being nothing suppressed on that subject by the exercise of a privilege, the provisions of section 1042, subdivision (a) are not applicable. (See *Kelvin L.* v. *Superior Court, supra,* 62 Cal.App.3d 823, 829, fn. 1.)

The court observed, in the light of the police department's claim of privilege, "Since we have now ruled that the material sought is discoverable along the lines outlined above, section 1042, subdivision (a), does become applicable if the People choose to stand on their claim of privilege. Upon remand, the People should therefore be given the option of disclosing the material or asserting the privilege. If the People once more assert the privilege, the rights of privacy of the officers and citizens involved and the fact that the charges against the officers were not substantiated are factors which the court may weigh in deciding whether the public interest favors disclosure of the information or sustaining of the privilege. (Evid. Code, § 1040, subd. (b)(2).) But while these factors may tip the scales in favor of the privilege, they do not render section 1042, subdivision (a), inapplicable. [¶] Petitioner's request below that the court find, pursuant to section 1042, subdivision (a), that he acted in self-defense, sought more than he was entitled to. If, upon remand, the People again assert the privilege, and if their claim is sustained, the court needs only to find that on three prior occasions the officers used excessive or unnecessary force against citizens." (62 Cal.App.3d at pp. 830-831.)

■ So here the magistrate erred in assuming that the reports were undiscoverable merely because the files contained material which supported the findings, both by the internal affairs department of the police department and by the magistrate himself, that the complaints of excessive or unnecessary force which were of record were either unfounded, or upon an investigation resulted in the conclusion that the officer should be exonerated.[2]

---

[2]Our examination of the files leads us to the same conclusions. In applying the liberal discovery rules developed by the decisions reviewed herein we express no opinion as to whether the matters referred to in the files, the adverse facts found on exercise of a privilege with respect to each incident, or independent evidence of such incidents may be excluded under the provisions of section 352 of the Evidence Code. It would be absurd to turn the trial of the events involved in the search and arrest in this case into a nine-ring circus, in which focus on the main ring would be obscured. Nor do we rule on the issue of whether there must be some independent evidence that the defendant was acting in self-defense before specific acts of use of excessive force by the victims of the charged assault became relevant and material. Section 1103 does not render admissible what was not admissible before, it merely qualifies the exclusionary rules of section 1101. *People* v. *Lamar* (1906) 148 Cal. 564 [83 P. 993], which is cited by the Law Revision Commission in the comment following section 1202 tells us, "Hence, *when there is evidence in a case tending to support the claim of a defendant that he acted upon an honest apprehension of imminent peril from some overt act on the part of the deceased, and the circumstances of the fatal contest are equivocal,* the reputation of the deceased as a violent and dangerous man is proper and competent evidence to present to the jury for consideration in determining whether defendant acted upon a reasonable apprehension that he was in imminent peril. It is obvious that under such circumstances, as the known reputation of the deceased for the traits involved would necessarily operate upon the mind of the defendant, such

Since the magistrate's finding "that the refusal of such information to the Defendant would not in any way deny the Defendant of a fair trial or a fair preliminary examination" may be tainted by the misunderstanding of the applicable principle of law, the case must be remanded. In accordance with *Kelvin L.* v. *Superior Court, supra,* if the public entity persists in asserting its privilege, and if the magistrate upholds the privilege under the provisions of paragraph (2) of subdivision (b) of section 1040 of the Evidence Code, he must make a finding of fact adverse to the People "as is required by law upon any issue in the proceeding to which the privileged information is material." (§ 1042, subd. (a).) On that score it would be necessary to find, although perhaps unwarrantedly, that one officer during the period from June 1969, through October 1972, used excessive force on one occasion and unnecessary force on three occasions, and that the other officer used excessive force on two occasions during the year 1970-1971, and that none of the incidents involved execution of a search warrant, or an incident such as is involved in the present case.

### III

We now turn to the federal records. The record in this case indicates that the federal agent had testified that the entry and execution of the search warrant were made in accordance with the provisions of section 1531. of the Penal Code. At the original hearing on the defendant's motion the magistrate pointed out that he could not order the federal authorities to disgorge records, and he was of the opinion that he could not order the district attorney to do something he could not himself order. Nevertheless, he suggested the use of a subpoena duces tecum.

A subpoena duces tecum was issued by the municipal court on application of the defendant on October 22, 1976. On November 2, 1976, the defendant indicated to the court that the Bureau of Alcohol, Tobacco and Firearms had not yet responded to his subpoena, but that they had indicated they had certain material which they would not claim as privileged, and that other material which they might claim to be privileged. The matter was continued.

---

reputation is a matter of proper and legitimate consideration for the jury. *In the case at bar we are satisfied that in the doubtful state of the evidence as it stood when the testimony to prove the reputation of the deceased as a violent, quarrelsome, and dangerous man when intoxicated was offered,* the testimony for the reasons we have indicated, should have been permitted to go before the jury." (148 Cal. at p. 576, italics added.) If the character or trait of character is not admissible, the justification for the use of specific acts to prove that trait disappears.

At the continued hearing the parties stipulated that if the acting regional director of the federal bureau, who had been served with the subpoena duces tecum, were called as a witness he would testify as set forth in a letter of November 4, 1976, addressed to the attorney for the defendant. The letter advised that the bureau's reports of the incident giving rise to the charges would be forthcoming. It outlined the procedures to be followed with respect to securing the personnel records of an employee of the bureau. They required a request of the office of inspection in Washington, D.C. The regional director made it clear that he did not possess, or have control over, the personnel records, and that under the provisions of the federal privacy act they could not be released to anyone except pursuant to an order of a court of competent jurisdiction. The defendant commented on the expense of securing evidence in Washington, D.C. by subpoena duces tecum and by securing the attendance of a witness from without the state, pursuant to sections 1334-1334.6 of the Penal Code.

At that point the magistrate interposed that since the case was one where there was an alleged shooting through the door at persons unknown, proof that Agent Newberry was overly aggressive would not have any probative value, and that the burden was on the defendant to show that there was information which he sought that was so essential as to justify stopping the preliminary hearing. He concluded that it was not necessary, practical or reasonable to delay the proceedings at that stage to permit service of another subpoena on the federal authorities.

The defendant then renewed his motion as follows: "I am now asking on behalf of Mr. Saulter that this Court follow the procedures set out by California Supreme Court, for discovery in these type of cases, and order the prosecution to obtain from the Bureau of Alcohol, Tobacco and Firearms all relevant personnel records or records from the Office of Inspection in Washington, D.C., which show any citizen's complaint or any other types of complaints lodged against Special Agent Newberry of that Bureau, for acts of excessive force and violence in the execution of search warrants, or in making arrests of persons, any complaints against Special Agent Newberry for those particular types of activity."

The court then ruled: "The Court feels that would represent an unreasonable delay. And so far as the Court can tell, from reading the police report and other facts that have been brought before the Court, there is nothing to justify stopping this prosecution for that"; and, at the

request of the prosecutor, added the ground that the records sought were equally unavailable to the prosecution.

In their return the People rely upon *People* v. *Parham* (1963) 60 Cal.2d 378 [33 Cal.Rptr. 497, 384 P.2d 1001] [cert. den. (1964) 377 U.S. 945 (12 L.Ed.2d 308, 84 S.Ct. 1353) and 379 U.S. 873 (13 L.Ed.2d 80, 85 S.Ct. 21)]. In that case the defendant sought written statements which identifying witnesses had given agents of the Federal Bureau of Investigation following a lineup in which defendant was identified as the perpetrator of several robberies. There the prosecution, while admitting it had examined the statements, stated that the F.B.I. refused to surrender them. There, as here, the court suggested that the defendant proceed through a subpoena duces tecum, and he did. On the return, the agent served appeared with an assistant United States attorney. An order of the United States Attorney General required such procedure, and mandated that the issuing court be informed that the employee was not authorized to produce or disclose the information, but the matter had to be referred to the Attorney General. Although the assistant United States attorney offered to follow that course, the defendant apparently conceded that the records could not be produced at that time. The trial court denied the defendant's motion to hold the agent in contempt, and subsequently denied his motion to strike the testimony of all of the witnesses whose signed statements had not been produced. The Supreme Court ruled: "Defendant contends that because the signed statements were not produced he was deprived of a fair trial by the denial of his motion to strike the witnesses' testimony. Had the witnesses' statements been in the possession of the prosecution an order to produce would have been proper. [Citations.] Moreover, had defendant been prosecuted under federal law the statements could have been produced under the Jencks Act. (18 U.S.C.A. § 3500.) It does not follow, however, that the use of the witnesses' testimony even though their prior statements were unavailable deprived defendant of a fair trial. The prosecution did not withhold the statements, but on the contrary made every effort to obtain them from the F.B.I. The prosecution cannot be penalized because those efforts failed. The prosecution is not penalized if, through no fault of state officials, a material witness for the defense is unavailable at trial. [Citations.] It does not appear that the statements were unavailable because of any improper activity by state officials. The police were under no compulsion to take statements from the witnesses. [Citation.] There is nothing to show that the police conspired with the federal agents to deprive defendant of the statements: The prosecution was therefore entitled to use the testimony of the witnesses even though their signed

statements were unavailable." (60 Cal.2d at pp. 381-382. See also *Marchese* v. *State of Cal.* (9th Cir. 1976) 545 F.2d 645, 648; and cf. *Harvey Aluminum (Incorporated)* v. *N.L.R.B.* (9th Cir. 1964) 335 F.2d 749, 752-756.)

Petitioner claims that the foregoing case should be distinguished because in *Parham* the federal agency was only peripherally involved, whereas in this case the federal officer had personally secured the search warrant, which was used in the entry of the petitioner's home, led the other officers into his residence, and was a percipient witness of the events giving rise to the charges that are the subject of the action below. It appears to us that those facts bear upon the materiality and relevancy of the records in question, but they do not answer the questions of whether such records can be discovered, and, if not, what sanctions must be imposed.

The statute confers an unconditional privilege when disclosure is forbidden by an act of the Congress of the United States (Evid. Code, § 1040, subd. (b)(1)), and when disclosure is so forbidden there is no requirement that an adverse finding be made against the public entity bringing the proceeding. (*Id.,* § 1042, subd. (a).) The federal Privacy Act (88 Stats. 1897, as amended 89 Stats. 1057) is found in section 552a of title 5 of the United States Code. It provides, as pertinent to this case, in subdivision (b), "No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, unless disclosure of the record would be— . . . [¶] (7) to another agency or to an instrumentality of any governmental jurisdiction within or under the control of the United States for a civil or criminal law enforcement activity if the activity is authorized by law, and if the head of the agency or instrumentality has made a written request to the agency which maintains the record specifying the particular portion desired and the law enforcement activity for which the record is sought; . . . [¶] (11) pursuant to the order of a court of competent jurisdiction."

From the foregoing it is apparent that Congress has not unconditionally forbidden disclosure. In the light of the dictum in *Pitchess* v. *Superior Court, supra,* that is first quoted in part I of this opinion (11 Cal.3d at pp. 534-535), it would appear that the court to whom the motion to discover federal records was addressed, upon determining that the records are described with sufficient specificity and that there is plausible justification for their production, should order the prosecuting agency to request the records under paragraph (7) of subdivision (b) of section 552a. It is

conceivable that the agency may refuse to disclose the records because of some other authorized policy grounds (see 5 U.S.C.A. § 552a(j) and (k)), or because the statute is construed as authorizing disclosure solely for law enforcement activity directed at the individual who is the subject of the records. (Paragraph (3) of subdivision (c) of the act exempts disclosures under paragraph (7) of subdivision (b) from the requirement of accounting to the individual for any discoveries that may be made.)

In the event of such refusal, there remains the use of the subpoena power. We have not explored what may be considered a court of competent jurisdiction under the Privacy Act, or whether there may be situations in which the material may be withheld despite a subpoena. (See subds. (k) and (*l*) of § 552a, *supra.*)

In the light of what we have set forth above, the magistrate erred in refusing a discovery order and in impliedly denying a further subpoena. He should have required the prosecutor first to request the records, and that failing, to subpoena them. If neither alternative suffices, there remains the question of sanctions. If the federal agency is properly adamant in refusing to furnish the records, section 1042, subdivision (a), and *People* v. *Parham, supra,* would appear to relieve the prosecution of the sanction of an adverse finding. Nevertheless, we note that the restriction on disclosure in the Privacy Act, does not apply to a disclosure "pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains." (5 U.S.C.A. § 552a(b).) Unless there is supervening policy under an act of Congress, which precludes such action by an employee of the bureau involved in this matter, sanctions similar to those contemplated by state law against the use of the testimony of the federal officer as a witness might be imposed. In other words, a finding that he had used excessive or unnecessary force on past occasions might be imposed against a federal employee witness, if his refusal to consent to the disclosure of his personal records were the sole ban to the discovery of such records.

We are mindful of *Dell M.* v. *Superior Court, supra,* 70 Cal.App.3d 782. There the Court of Appeal ruled that where there was a wilful and persistent refusal to comply with a discovery order, after a conditional claim of privilege had been overruled, by an agency employing one of two officers involved in a charge of interfering with an officer in the performance of his duties, the charge, insofar as it was based on a physical altercation with the officers, would have to be dismissed. The lower court had merely ordered all reference to that single officer

deleted, and ruled that he could not testify, while permitting the case to continue with respect to the officer of another agency which had made full disclosures of the requested records concerning the officer's propensity to use excessive force. The court pointed out, "The sanction fashioned by respondent court to deal with the Downey Police Department's refusal to turn over the pertinent records was inadequate under the circumstances of this case to assure petitioner a fair trial insofar as the People's case is predicated upon the scuffle which took place when the officers attempted to subdue petitioner. Calvert and Donahoe acted in concert and their actions are inextricably intertwined. Citizen complaints as to both of them are therefore discoverable whether or not they are both named in the formal charge." (70 Cal.App.3d at p. 787.) Since it is not yet finally determined whether the federal agent's records will or will not be produced, and, if the latter, whether there is an absolute, as distinguished from conditional privilege of nondisclosure, the applicability of the principles applied in the foregoing case cannot be determined.

## IV

We are appalled at the delays in this case. The incident giving rise to this offense occurred on January 23, 1976. As appears from the record in petitioner's dismissed appeal (1 Civ. 42034), of which we take judicial notice, the original complaint was filed four days later and an amended complaint the following day. The delays have occurred because the wounds suffered by the petitioner, who allegedly was shot six times by Agent Newberry at the time of execution of the search warrant, rendered him unable to appear in court, because of delays inherent in review proceedings, and because of a delay in getting the record. As *l'envoi* to our decision on the merits, we feel obliged to suggest the manner in which the delays inherent in the judicial process may be avoided, including criticism of our own action in the premises.

The case was continued from time to time until March 19, 1976, because petitioner was hospitalized under intensive care. On that day he was arraigned at the hospital, and the public defender was appointed to represent him. The public defender found a conflict of interest and petitioner's present attorney was appointed March 31. There were further continuances until May 14, 1976, when the appointed attorney appeared with petitioner at the hospital and secured another continuance. On May 18 a motion for routine pretrial discovery was made and on May 24 it was granted in most particulars. On June 2, the petitioner waived time, and had his preliminary examination set for July 13. On

that date it was continued because of his hospitalization. He continued hospitalized and was released on his own recognizance under supervision on August 24, and the preliminary examination was set for September 7. At that time Agent Newberry gave his testimony, and a continuance was granted the petitioner to attempt to locate two percipient witnesses of the shooting. The matter was then continued twice, to October 5, when because of an accident to the petitioner, it was stipulated that the preliminary examination would be continued until November 2, 1976. It was then that the supplemental motion for pretrial discovery was interposed, and the proceedings reviewed above ensued. Because of the pendency of those proceedings the preliminary hearing was continued to December 7, 1976.

Following the denial of discovery by the magistrate, the petitioner on December 1, 1976, filed his petition for a writ of mandate in the superior court and secured an alternative writ of mandate and a stay of the preliminary hearing, which was then continued to June 6, 1977, subject to advancement on termination of the superior court proceedings. The matter was heard and denied by the superior court on February 7, 1977, judgment was entered accordingly the following day, and the stay was vacated. Petitioner's appeal and these proceedings ensued.

With the benefit of hindsight and a more complete record,[3] the following points stand out. Upon proper showing by the People, the superior court could have and did uphold, and this court could have upheld, the order denying supplemental discovery on the ground that, coming as it did in the middle of the preliminary hearing, it was untimely. Secondly, it appears, and should have appeared to us at the time we stayed the preliminary hearing, that the petitioner would not have been prejudiced had we ordered the preliminary hearing to proceed on the assumption that the incidents of which complaint had been made in the reports had occurred, without prejudice to the petitioner's right to renew his motion in the superior court. It would be the height of judicial inefficiency and futility if in a case like this, the hearing of a preliminary examination was delayed a year for discovery motions only to produce a finding of lack of probable cause on the evidence already available.

We are aware that when it appears that during the course of the preliminary examination, the defendant has been denied a substantial right, the commitment is unlawful within the meaning of Penal Code

[3]The record was filed in the appeal on August 8, 1977, and the materials examined by the court *in camera* on August 11, 1977.

section 995, and it must be set aside upon timely motion. (*Jennings* v. *Superior Court* (1967) 66 Cal.2d 867, 874 [59 Cal.Rptr. 440, 428 P.2d 304]; *People* v. *Elliot* (1960) 54 Cal.2d 498, 503 [6 Cal.Rptr. 753, 354 P.2d 225]; and *Priestly* v. *Superior Court* (1958) 50 Cal.2d 812, 819-820 [330 P.2d 39] and Carter, J. conc. at p. 822.)[4] In the *Jennings* case it was held erroneous to deny a continuance· so the accused could secure the attendance of a witness who was with the accused at the time of his arrest, and to limit cross-examination of the officers. concerning their knowledge of the reason for the witness' presence at the scene (66 Cal.2d at pp. 875-876 and 877). In *Priestly* there was a failure to grant discovery of the name of an informer whose testimony was material on the issue of the existence of reasonable or probable cause to arrest and search an accused (50 Cal.2d at pp. 817-819).

Here on the other hand there was an attempt to secure circumstantial evidence of a defense which had not yet been directly presented by any witness and the request was untimely. The rulings of the magistrate and the superior court may be justified on the analysis made in *Mitchell* v. *Superior Court* (1958) 50 Cal.2d 827 [330 P.2d 48] where the court found technical error in the refusal to grant discovery but refused to dismiss the information. It stated, "The value to defendants of disclosure is that it .might enable them to obtain information useful in their defense at the trial. It cannot be presumed that the superior court will erroneously deny disclosure at the trial or fail to grant a continuance if it is necessary to enable defendants to locate and interview the informers in the preparation of their defense. Although the delay incident to such a continuance would have been obviated had the magistrate ruled correctly, his erroneous ruling on the admissibility of evidence does not raise a jurisdictional issue. [Citations.] Since there was competent evidence to justify committing defendants and disclosure of the names of the informers can be obtained at the trial, defendants were not prejudiced by the error or deprived of any substantial right." (50 Cal.2d at p. 830.) So here, if we had approved the magistrate's ruling expediting the preliminary hearing, the petitioner still could have sought his discovery in the superior court.

---

[4]That principle does not mean that relief by motion to dismiss under section 995, if the magistrate improperly denied discovery, is an adequate legal remedy. The defendant is entitled to proper discovery on timely motion, and a remand for a new preliminary hearing would not speedily and adequately protect his right to present matters in defense at the preliminary hearing if he is so minded. (See *Jennings* v. *Superior Court, supra,* 66 Cal.2d 867, 880.)

In this case, however, having stayed the preliminary hearing and granted the alternative writ, we felt impelled to dispose of the petitioner's motion on its substantive merits rather than on procedural grounds. It is to be hoped that the case will now proceed with dispatch with a full hearing before the magistrate.

Let a writ of mandate issue directing respondent court to set aside its orders denying petitioner's motion for discovery in the matter of People v. Saulter, No. 93466, and commanding it to conduct further proceedings on said motion consistent with the views expressed in parts II and III of this opinion.

Racanelli, P. J., and Elkington, J., concurred.

A petition for a rehearing was denied December 12, 1977, and the opinion was modified on December 12 and 16, 1977, to read as printed above.