Filed 3/14/14  P. v. Rodriguez CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C072244 |
| Plaintiff and Respondent, | (Super. Ct. No. 11F01360) |
| v. | |
| LUIS ALFONSO RODRIGUEZ, | |
| Defendant and Appellant. | |

A jury convicted defendant Luis Alfonso Rodriguez of possession of marijuana in a state prison.  (Pen. Code, § 4573.6.)[1]  The trial court sustained a strike allegation (§§ 1170.12, 667, subds. (b)-(i)) and sentenced defendant to a two-year prison term to be served consecutive to his term for second degree murder in another case.

---

[1] Undesignated statutory references are to the Penal Code in effect at the time of defendant's crime.

On appeal, defendant contends the trial court erred in not granting his motion for mistrial based on the prosecutor alluding to drug sales.  In addition, defendant requests this court to examine the confidential files the trial court viewed under *Pitchess*[2] to determine if his motion for discovery of police officer records was properly decided.  We conclude the trial court abused its discretion in ruling on defendant's *Pitchess* motion, and we therefore conditionally reverse defendant's conviction and remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

### *The Prosecution*

Sergeant Chris Haring is a correctional officer assigned to California State Prison at Sacramento.  On August 26, 2010, Sergeant Haring was the "program sergeant" in charge of the facility.  At around 8:30 a.m., he and several other correctional officers conducted a strip-search of the inmates working in the prison yard of "C" block.  About 25 inmates were working in the yard, while the rest of the general population remained inside.  The prisoners working the yard were directed to bleachers adjacent to a baseball field, where 12 to 16 officers conducted the search.

Sergeant Haring went behind the bleachers on the right side to observe the inmates, who then were taken individually to another area for the search.  The search progressed until five inmates remained.  Sergeant Haring then saw defendant toss something with his left hand, using an underhand "flicking motion" and causing the item to land underneath the first row of the bleachers.  Sergeant Haring pointed out defendant to another correctional officer and had him handcuffed.  Defendant was removed from the yard and the search continued.  Sergeant Haring recovered the item, which held a

---

[2] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531.

bindle containing 1.41 grams of marijuana. Inside the bindle was a note stating, "P weed."

Later during the search, Sergeant Haring saw a homemade weapon next to inmate Tu Tran, who was sitting or standing in the area defendant had been. An officer took the weapon, a clear plastic "shank," and Sergeant Haring handcuffed Tran.

The prison is under the surveillance of video cameras controlled and directed by correctional staff. The cameras cannot cover every part of the prison yard at every moment. The video surveillance of the incident did not show any clear detail of the bench area of the bleachers or defendant's disposal of the marijuana.

### The Defense

Inmate William Duvall, who had prior convictions for forgery, grand theft, and first degree murder, testified he was standing near defendant that morning and never saw him toss anything.

Testifying on his own behalf, defendant denied throwing the object or possessing marijuana. He saw no other inmate toss anything that day. He admitted to prior convictions for grand theft, assault with a deadly weapon, and murder.

### Rebuttal

A correctional officer assigned to the Investigative Services Unit testified that the amount of marijuana in this case was a usable quantity.

### The New Trial Motion

During the opening statement, the prosecutor told the jury it would hear expert testimony from Correctional Officer Christopher Weust "about controlled substances such as marijuana and the part they play in prison and the dangers that the possession and the distribution and sharing and selling of those items" and defense counsel objected. After the jury was removed, counsel moved for a mistrial arguing this proposed evidence

3

was irrelevant and prejudicial since defendant was charged only with possession of marijuana. The prosecutor argued the note found with the marijuana showed it was "part of a distribution" inside the prison, and the testimony should be admitted in order to provide a complete picture of what went on inside the prison. The trial court denied the mistrial motion, noted the jurors had already been admonished not to treat the attorneys' statements as evidence, and tentatively ruled that the issue of distribution was not relevant but the note was admissible.

After the defense rested, the prosecutor said he wanted to call Officer Weust in rebuttal, "to testify about the way drugs enter the prison, the way drugs are distributed among the prison, and exchanged and bartered for and paid for by inmates. I think that's all relevant based on the note attached to the marijuana." Defense counsel again objected to the testimony. The trial court noted defendant admitted in his testimony that drugs were transferred between prisoners. Therefore, the trial court found there was nothing for the prosecution to rebut on that point and would not allow Officer Weust to testify on drug distribution in prison.

The prosecutor called Officer Weust, who testified that 1.4 to 1.6 grams of marijuana would be a usable amount, and that a prisoner would use the marijuana by smoking it. The prosecutor then asked Officer Weust, "And as far as the distribution of drugs in prison, is it a common occurrence that inmates pass drugs from one inmate to another?" Officer Weust answered, "Yes, it is," and defense counsel asked to approach. After a sidebar conference, the trial court struck the last question and answer, and instructed the jury that they could not consider it as evidence. The prosecutor ended the examination after the trial court's ruling.

The following day, defense counsel moved for a mistrial with jeopardy attaching or, alternatively, for the court to admonish the jury "that the prosecutor committed misconduct by disobeying an order of the court." The trial court denied the motion,

finding not "even a scintilla of evidence" of intentional misconduct by the prosecutor. The trial court also declined to give the requested admonishment, finding the question was not prejudicial as it would have addressed a matter, distribution of drugs within prison, that defendant already admitted in his own testimony.

## DISCUSSION

### I. Mistrial Motion

Defendant contends the prosecutor's reference to drug distribution in prison during the opening statement and when questioning Officer Weust constituted prejudicial misconduct, and the trial court consequently erred in denying his motion for mistrial.

"A prosecutor's conduct violates the Fourteenth Amendment to the federal Constitution when it infects the trial with such unfairness as to make the conviction a denial of due process. Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves the use of deceptive or reprehensible methods to attempt to persuade either the trial court or the jury." (*People v. Morales* (2001) 25 Cal.4th 34, 44; *People v. Samayoa* (1997) 15 Cal.4th 795, 841.) " 'The deliberate asking of questions calling for inadmissible and prejudicial answers is misconduct.' " (*People v. Bell* (1989) 49 Cal.3d 502, 532; *People v. Smithey* (1999) 20 Cal.4th 936, 960.) The prosecutor has " 'a duty to guard against inadmissible statements from his witnesses . . . .' " (*People v. Parsons* (1984) 156 Cal.App.3d 1165, 1170.) "When the claim focuses on the prosecutor's comments to the jury, we determine whether there was a reasonable likelihood that the jury construed or applied any of the remarks in an objectionable fashion." (*People v. Booker* (2011) 51 Cal.4th 141, 184-185.)

We will not reverse a conviction for prosecutorial conduct that violates state law unless it is reasonably probable that the jury would have reached a result more favorable

to defendant in the absence of the misconduct. (*People v. Wallace* (2008) 44 Cal.4th 1032, 1071.)

Defendant claims "the prosecutor's repeated efforts to bring this information before the jury was tantamount to implying that he had a secret store of information he could not tell the jury about—drug trafficking and the dangers of drugs within the prison walls. These efforts cannot have been lost on this jury, which took four and a half hours on one day and two hours the next to decide this relatively straightforward case." From this, he concludes the alleged error warrants reversal. He is wrong.

The alleged misconduct consists of a single statement during the opening argument that the prosecution would present evidence about the distribution of drugs in prison and their dangers, and a single question, whether prisoners passed drugs to each other, along with an affirmative answer. At least some of the subject matter of those statements had already been admitted by defendant when he testified that drugs were distributed inside prison. Before the opening statement, the jury was instructed not to consider the attorneys' statements as evidence. The trial court struck the allegedly improper question and Officer Weust's answer, and instructed the jury not to consider it as evidence. We assume the jury followed the trial courts instructions. (*People v. Holt* (1997) 15 Cal.4th 619, 662.) Assuming, without deciding, that the question and statement could be considered misconduct, neither individually nor together could they be considered so prejudicial that they were not cured by the instruction and admonition.

## II. *Pitchess* Error

### A. *Background*

Defendant asks us to review the trial court's finding in response to his *Pitchess* motion that there were no discoverable materials to disclose. Defendant filed a *Pitchess* motion seeking discovery of information related to illegal arrests, falsification of evidence or testimony or other alleged acts involving moral turpitude concerning

6

Sergeant Haring. A declaration from defense counsel attached to the motion stated that defendant informed counsel that he did not possess marijuana, did not throw any item during the search, and did not make any movement or motion that could lead an observer to believe that he was throwing an object. The declaration set forth a scenario that "Correctional Sergeant Haring did not directly observe who threw the item which contained the marijuana, but assumed it might be [defendant], and that the Sergeant is testifying he saw the item being thrown although he did not, and that he is merely conjecturing that [defendant] threw the item despite testifying that he in fact saw the item being thrown."

The trial court granted the *Pitchess* motion and held an in camera hearing with a deputy attorney general and the litigation coordinator for the California State Prison Sacramento. The coordinator informed the trial court she had Sergeant Haring's entire personnel file, which the court then examined. It found nothing in the employee emergency contact information, employee information paper, employee benefits section, notice of personnel assignments, employee performance section, performance evaluation, transfer data and hiring information, or miscellaneous information sections.

The coordinator informed the trial court that there was one staff complaint that an inmate put forward, which was kept separate from the file. The trial court took the complaint and indicated it would order discovery of the identity of the inmate who made the complaint in March 2010. The litigation coordinator then asked to see the complaint. Upon receiving the complaint she noted that it had not been substantiated.

The deputy attorney general said unsubstantiated complaints do not get disclosed. The trial court disagreed, so the deputy attorney general asked, "But then everyone who makes a complaint against an officer, even though it's not substantiated, gets—becomes part of the Court's record?" The trial court replied that that is what happens with *Pitchess* motions for police officers.

7

After determining the inmate was in Sacramento, the litigation coordinator informed the court that she had done this for nine years and the only complaints that were ever disclosed had been substantiated. The deputy attorney general remarked this had been her experience as well. The trial court asked for any authority on this point, and the deputy attorney general replied she did not usually put it in her moving papers, but she might be able to get it from her office. The trial court said this was contrary to *Pitchess* practice, as the relevance of a complaint is not dependent upon how it is resolved by internal affairs. The litigation coordinator reiterated she had never disclosed an unsubstantiated claim.

The deputy attorney general interjected that her office takes the position that such complaints had little or no practical benefit and were not material to the action. After being reminded she was under oath, the litigation coordinator said that in every case she had done, there was no disclosure of unsubstantiated claims. She had done more than 10, and worked with all the attorneys in the deputy attorney general's office.

The trial court declined to disclose the complaint, but read the complaint into the record "to protect the record in case of appeal." The trial court said the complaint alleged misconduct of the nature sought by the *Pitchess* motion.

The trial court then ended the in camera hearing and informed defense counsel there was nothing to disclose.

### *B. Analysis*

"For approximately a quarter-century our trial courts have entertained what have become known as *Pitchess* motions, screening law enforcement personnel files in camera for evidence that may be relevant to a criminal defendant's defense." (*People v. Mooc* (2001) 26 Cal.4th 1216, 1225, fn. omitted (*Mooc*); see *Pitchess*, *supra*, 11 Cal.3d 531.) To balance the defendant's right to discovery of records pertinent to his or her defense with the peace officer's reasonable expectation that his or her personnel records will

8

remain confidential, the Legislature has adopted a statutory scheme requiring a defendant to meet certain prerequisites before his or her request may be considered. (See Pen. Code, §§ 832.5, 832.7 & 832.8; Evid. Code, §§ 1043-1047 [statutory scheme governing *Pitchess* motions].) A defendant seeking discovery of a peace officer's confidential personnel record must file a written motion describing the type of records or information sought (Evid. Code, § 1043, subd. (b)(2)) and include with the motion an affidavit demonstrating "good cause" for the discovery and the materiality of such evidence relative to the defense (Evid. Code, § 1043, subd. (b)(3); *Mooc, supra*, 26 Cal.4th at p. 1226). The information must be requested with "sufficient specificity to preclude the possibility of a defendant's simply casting about for any helpful information." (*Mooc*, at p. 1226.)

Once the trial court concludes the defendant has satisfied these prerequisites, the custodian of records is obligated to bring to court all documents " 'potentially relevant' " to the defendant's motion. (*Mooc, supra*, 26 Cal.4th at p. 1226.) The trial court must then examine the information in chambers, outside the presence of any person except the proper custodian "and any other persons as the person authorized to claim the privilege is willing to have present." (Evid. Code, § 915, subd. (b); see Evid. Code, § 1045, subd. (b).) Subject to certain statutory exceptions and limitations, the trial court must then disclose to the defendant " 'such information [that] is relevant to the subject matter involved in the pending litigation.' " (*Mooc, supra*, 26 Cal.4th at p. 1226.) "A trial court's ruling on a motion for access to law enforcement personnel records is subject to review for abuse of discretion." (*People v. Hughes* (2002) 27 Cal.4th 287, 330.)

The trial court erred in relying on the statements of the deputy attorney general and the litigation coordinator that unsubstantiated complaints were not subject to discovery under *Pitchess*. "Unsustained complaints are discoverable as well as sustained complaints." (*People v. Zamora* (1980) 28 Cal.3d 88, 93, fn. 1.) It is therefore error for a

9

trial court to decline *Pitchess* discovery based on the mere fact that an internal investigation deemed the complaint unfounded. (*Saulter v. Municipal Court* (1977) 75 Cal.App.3d 231, 240, superseded by statute on another ground in *People v. Superior Court* (*Barrett*) (2000) 80 Cal.App.4th 1305, 1319-1320.)

"The fact remains that under our constitutional system the burden for preparing a criminal defendant's case rests with his counsel, not with the police department. That burden cannot be properly discharged unless counsel has direct access to potential witnesses, for it is counsel who must decide if they can aid his client, not the police department's internal affairs division, however sincere and well motivated the latter may be." (*Kelvin L. v. Superior Court* (1976) 62 Cal.App.3d 823, 829.)

Our review of the complaint as related by the trial court indicates its subject matter was within the materials sought by the *Pitchess* motion. We therefore conclude the trial court abused its discretion in failing to order disclosure of the relevant information. Consequently, we will conditionally reverse defendant's conviction with directions to the trial court to disclose the relevant information pertaining to the complaint and to give defendant a reasonable opportunity to investigate the disclosed material and request a new trial if he demonstrates a reasonable probability of a different outcome had the evidence been disclosed. Otherwise, the trial court shall reinstate the judgment. (See *People v. Fernandez* (2012) 208 Cal.App.4th 100, 123, affd. *sub nom. Fernandez v. California* (2014) ___ U.S. ___ [188 L.Ed.2d 25].)

## DISPOSITION

We conditionally reverse defendant's conviction with directions to the trial court to order disclosure of the relevant information pertaining to the complaint against Sergeant Haring, to allow defendant a reasonable opportunity to investigate the disclosed material and demonstrate prejudice, and to order a new trial if there is a reasonable

10

probability of a different outcome had the evidence been disclosed.  Otherwise, the trial court shall reinstate the judgment.

        BUTZ        , J.

We concur:

        BLEASE        , Acting P. J.

        MURRAY        , J.