[Civ. No. 60124. Second Dist., Div. One. Nov. 10, 1980.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
ROBERT LEE BROWN, Real Party in Interest.

COUNSEL

John K. Van de Kamp, District Attorney, Donald J. Kaplan and Roderick W. Leonard, Deputy District Attorneys, for Petitioner.

No appearance for Respondent.

Wilbur F. Littlefield, Public Defender, Dennis A. Fischer, Hideo Nakano and James M. Hallett, Deputy Public Defenders, for Real Party in Interest.

OPINION

LILLIE, J.—This case is before us on petition for writ of mandate brought by the People pursuant to section 1538.5, subdivision (o), Penal Code, subsequent to order granting defendant's motion to suppress evidence (§ 1538.5, Pen. Code). The felony case against defendant is still pending before the superior court not having been dismissed under section 1385, Penal Code, thus writ of mandate is a proper remedy.

Defendant was charged by information with a violation of section 12021, Penal Code (possession of a firearm by one convicted of a felony). He moved to suppress a black holster and a .25 caliber gun on the ground there was no probable cause to detain him. ██ The motion was heard de novo; only one witness, Officer Vanderwal testified; his testimony is undisputed and the trial court did not question the credibility of the witness. Thus, the issue whether the holster and gun are admissible is one of law. (*People* v. *Superior Court (Mahle)* (1970) 3 Cal.App.3d 476, 488 [83 Cal.Rptr. 771].) The trial court found there was no probable cause to stop defendant and even if there was, "under the doctrine of *People* v. *Longwill*, 14 Cal.3d 943, there was no probable cause to make a patdown search."

At 3:30 a.m. Officer Vanderwal with his partner, in uniform and on patrol car duty which included traffic matters, was driving a patrol car slowly (5-20 miles per hour) down Hollywood Boulevard; as he approached Bronson Avenue, Officer Vanderwal observed defendant and a companion walking on Hollywood Boulevard about 10 to 15 feet west of the intersection; at the same time he noticed a red "Don't Walk" pedestrian signal flashing at the intersection, then while the "Don't Walk" sign was still flashing, he saw defendant and his companion step off the curb and walk across the intersection against the flashing signal; he was

approximately 30 feet away from the two men. Traffic was light; two or three cars passed through the intersection. When Officer Vanderwal observed defendant and his companion step off the curb and enter the intersection against the "Don't Walk" flashing signal, he intended to issue citations for violations of section 21456, subdivision (b), Vehicle Code;[1] he made a U-turn and pulled up to the curb, stopped, and exited the patrol car; defendant and his companion were 10 to 15 feet in front of the police and already off the street; he called for both men to stop.

We disagree with the trial court's ruling that there was no "probable cause for the stop in this case" for the issuance of a citation. Officer Vanderwal saw defendant and his companion commit a traffic infraction (§ 21456, subd. (b), Veh. Code) in his presence whereupon he immediately intended to and did stop them "just simply to write them a traffic citation" for said violation. He had the right, indeed the duty, to detain them for this purpose. (§§ 40500, 40504, Veh. Code; see *People* v. *Superior Court* (*Simon*) (1972) 7 Cal.3d 186, 199-200 [101 Cal. Rptr. 837, 496 P.2d 1205].)

At the conclusion of the suppression hearing the trial judge commented: "There's a considerable amount of leeway in police enforcement, sometimes called selective enforcement. I don't think there's anybody who walks or drives on the streets in Los Angeles who haven't seen people crossing the street against the Don't Walk sign. Sometimes if there's a policeman there the person will be stopped and issued a citation. Sometimes there will be no policeman there. Sometimes there'll be a policeman there and the person won't be stopped and issued a citation. Sort of chance."; then he ruled:

"I don't think there was probable cause for the stop in this case.

"By the time the officers made their U turn the people were on the sidewalk. They were going along their way. But even if there was probable cause to stop and cite under the appropriate Vehicle Code section, I think under the doctrine of People versus Longwill, L-o-n-g-w-i-l-l, 14 Cal.3d 943, there was no probable cause to make a patdown search.

---

[1]Vehicle Code section 21456, subdivision (b) provides: "Wait or Don't Walk. No pedestrian shall start to cross the roadway in the direction of such signal, but any pedestrian who has partially completed his crossing on the 'walk' signal shall proceed to a sidewalk, safety zone or island while the 'wait' or 'don't walk' signal is showing."

"Motion is granted."

On the basis of the court's comment relative to "selective enforcement," real party in interest defends the order of suppression on the theory, as set up in his return and answer to petition, that "the evidence was discovered as a consequence of his detention for a discriminatorily enforced traffic law (Veh. Code § 21456, subd. (b))" citing to our attention *Murgia* v. *Municipal Court* (1975) 15 Cal.3d 286 [124 Cal. Rptr. 204, 540 P.2d 44]; *Griffin* v. *Municipal Court* (1977) 20 Cal.3d 300 [142 Cal.Rptr. 286, 571 P.2d 997] and *People* v. *Hertz* (1980) 103 Cal.App.3d 770 [163 Cal.Rptr. 233].

The record in this case precludes us from reading the court's comment as anything more than a general discussion on the subject of selective enforcement, surely not as an express finding on the evidence or even as a basis for its ruling that there was no probable cause to stop defendant. First, although the court opined that there is "considerable amount of leeway in police enforcement, sometimes called selective enforcement," it did not attempt to apply that concept to this case nor did it state it as a ground for holding there was not probable cause for the stop. The court simply made no finding of selective enforcement here. Second, there is not a shred of evidence in the record before us upon which the trial court could have based such a finding which no doubt explains the reason the comment was so general. Third, defendant at no time in the court below claimed selective enforcement, did not even argue such a theory. His counsel based his argument of lack of probable cause to stop defendant on two grounds: (1) it was 3 a.m., there was minimal traffic and the traffic was going with him; and (2) he crossed when the light just started flashing. Defense counsel briefly argued "At this point, Your Honor, I believe that there's no probable cause to stop either of those two gentlemen at that particular point in time when the red light was flashing. I think at that particular time at night where there is very minimal traffic and traffic that you have is going with you, that is not probable cause to stop anyone to issue a citation. [¶] I think we're all aware of the fact that when you have crossed when the light has either started to or was—had just initially started flashing, I would submit to the court that is not reasonable grounds to stop anybody to issue a citation." Fourth, no issue of "selective enforcement" was raised at the hearing by either the evidence or defense counsel. We cannot *construe the court's musing on the subject as anything more than just that. Real party in interest asserts it to be "an express factual finding of

selective enforcement," but it is clear that the court's comment is neither a finding nor supported by any evidence.

Fifth, the "selective enforcement" discussed by the trial court is not the same as the "discriminatory enforcement" urged by real party in interest as an "implied finding" here and certainly is not the kind of "discriminatory enforcement of the law" contemplated in *Griffin* v. *Municipal Court* (1977) 20 Cal.3d 300, 302 [142 Cal.Rptr. 286, 571 P.2d 997] [discrimination based on race]; *Murgia* v. *Municipal Court* (1975) 15 Cal.3d 286, 291 [124 Cal.Rptr. 204, 540 P.2d 44] [discrimination based on union membership]; and *People* v. *Hertz* (1980) 103 Cal. App.3d 770, 774 [163 Cal.Rptr. 233] [discrimination based on party membership].

The trial court gave as the reason it did not think there was probable cause for the stop as, "By the time the officers made their U turn [defendant and his companion] were on the sidewalk. They were going along their way." But the evidence establishes an outright violation of a traffic law. The undisputed evidence shows that at 3 a.m. defendant and his companion stepped off the curb while the red Don't Walk signal was flashing and proceeded across Hollywood Boulevard against the flashing signal; there was little traffic, all traveling in the direction in which defendant was walking. Section 21456, subdivision (b) says that no pedestrian shall start to cross the roadway in the direction of a Don't Walk signal; it does not make allowance for the time of day or night or the safety of the crossing because of minimal traffic. Neither factor has anything to do with whether or not an infraction has been committed. Upon observing the violation in their presence, the officers, whose patrol duties that night included traffic enforcement, had a duty to cite defendant and his companion therefor. Further, there is nothing of a probative nature in the record that even suggests the "selective enforcement" mentioned by the trial judge which normally results from simple laxity of law enforcement or the nonarbitrary selective enforcement of a statute which, in any event, fails to reach the dimensions of denial of equal protection. And although real party in interest urges upon us "an implied factual finding of discriminatory enforcement,"[2] the proof nec-

---

[2]The evidence is undisputed but real party in interest seeks to introduce an issue of credibility of the sole witness, Officer Vanderwal, in order to bring this case within the rule of *People* v. *Lawler* (1973) 9 Cal.3d 156, 160 [107 Cal.Rptr. 13, 507 P.2d 621], that factual findings must be upheld by this court. No credibility issue or factual conflict in the evidence exists here. Clearly, the trial court accepted the testimony of Officer Vanderwal. The issue remains a question of law.

essary to support such a finding as set up in *Murgia* v. *Municipal Court* (1975) 15 Cal.3d 286 [124 Cal.Rptr. 204, 540 P.2d 44], is lacking. ■ "As we have explained, in order to establish a claim of discriminatory enforcement a defendant must demonstrate that he has been deliberately singled out for prosecution on the basis of some invidious criterion." (*Murgia* v. *Municipal Court*, at p. 298.) The evidence in no manner approaches that necessary to establish "discriminatory enforcement" of a criminal statute, nor did the trial judge discuss what real party in interest would like to have us believe was a detention "for a discriminatorily enforced traffic law."

The uncontradicted evidence further establishes that when ordered to stop, defendant's companion did so but defendant continued walking away from the officer. When Officer Vanderwal got out of the patrol car the two men were on the sidewalk only 10 to 15 feet away; he called for them to stop and defendant's companion complied by turning around and walking toward the officers but defendant continued on; he again yelled for defendant to stop but defendant did not hesitate or turn around and kept walking away from the officers; a third time he called to defendant to stop and finally defendant stopped, turned around and walked back to Officer Vanderwal. We note at this point, although we concede such was not in the contemplation of Officer Vanderwal, that defendant had committed a misdemeanor (§ 148, Pen. Code)[3] in his presence. Inasmuch as Officer Vanderwal had the legal right, indeed the duty, to detain defendant for the purpose of issuing a citation and defendant was well aware of the officer's desire, defendant had the concomitant duty to permit himself to be detained. (*People* v. *Allen* (1980) 109 Cal.App.3d 981, 985 [167 Cal.Rptr. 502].) Defendant knew full well "that the officer's attention was centered on him and that the officer wanted to talk with him." (*People* v. *Allen* (1980) 109 Cal.App.3d 981, 987 [167 Cal.Rptr. 502].)

In the process of detaining defendant for the purpose of issuing a citation for the traffic violation, Officer Vanderwal made a pat-down search for weapons which revealed a gun and a holster in his waistband. The following evidence relates to the pat-down search; it too is undisputed. The officer twice called to defendant to stop but defendant

---

[3]Section 148, Penal Code says that "Every person who wilfully resists, delays, or obstructs any public officer, in the discharge or attempt to discharge any duty of his office" is guilty of a misdemeanor.

without hesitation or turning around continued walking away from him; defendant's companion had stopped and walked back to the officers on the first call to stop; finally on the third call to defendant to stop, defendant stopped, turned around and walked back to Officer Vanderwal; as he did so Officer Vanderwal watched him, and thought his actions "rather peculiar"; defendant "was holding his hands kind of clasped together, maybe one palm over the other, kind of holding them in front of his waist" instead of holding his hands "in a normal fashion of down to your side"; he also saw a "slight bulge that was right at his waistband," "[r]ight behind where his hands were"; he could see "[a] little bit" beyond his hands and the bulge was "maybe a three inch square, three inch round, something like that" and "[i]f he was wearing a belt it would be right there at his waistband, right in the middle of his pants near his zipper"; his jacket was somewhat over it but even so he could see the bulge. It was Officer Vanderwal's intention in stopping defendant to simply write him a citation for walking against a red flashing "Don't Walk" sign, but "[f]rom his actions—of not stopping until I had called to him three times, his holding his hands in front of his waist, the bulge about which I described, and it being 3:30 in the morning," he thought defendant might be armed; the way defendant was holding his hands, "meant to [him] that he was trying to hide something, possibly a gun," then he told defendant to put his hands on top of his head and turn around; he patted-down defendant and found a .25 caliber automatic pistol inside a holster stuck down in his pants in the exact spot where he had seen the bulge.

The trial court found under the doctrine of *People* v. *Longwill* (1975) 14 Cal.3d 943 [123 Cal.Rptr. 297, 538 P.2d 753], there was no probable cause to make a pat-down search, a reliance misplaced. Defendant in *Longwill*, a passenger in the vehicle, was arrested for being drunk in public which could result in his transportation to a magistrate; the officer conducted a pat-down search of his person (which the court upheld apparently because defendant had to be transported in a police car); he felt nothing indicating a weapon, then conducted a full body search. It was the full body search that revealed the contraband under attack, and the Supreme Court held it was not permissible (p. 946).

In the instant case the violation for which defendant was stopped was one for which he could be cited and then sent on his way. ▮ While

there can be no pat-down search when an officer merely observes a traffic violation and stops the person for the purpose of issuing a citation, nevertheless a pat-down search for weapons may be made predicated on "specific facts or circumstances giving the officer reasonable grounds to believe" that defendant is armed (*People* v. *Superior Court* (*Simon*) (1972) 7 Cal.3d 186, 206 [101 Cal.Rptr. 837, 496 P.2d 1205]) or on other factors creating a potential for danger to the officers (*People* v. *Longwill* (1975) 14 Cal.3d 943, 949 [123 Cal.Rptr. 297, 538 P.2d 753] [passenger in car arrested for being drunk; justification for pat-down was necessity to place him in police car for transportation]; *People* v. *Brisendine* (1975) 13 Cal.3d 528, 536-538 [119 Cal.Rptr. 315, 531 P.2d 1099] [arrest of defendant for citation offense; circumstances justifying search of knapsack were necessity of traveling on foot with defendant and companions at night in primitive area]). ██ The circumstances here are far more imposing than those found in the foregoing authorities. The traffic violation was established without contradiction and it is all too clear that Officer Vanderwal did not conduct a pat-down search merely by reason of the traffic citation. He relied on specific articulated facts and circumstances which gave him reasonable grounds to believe defendant was concealing a gun in his waistband. It was 3:30 in the morning and fairly dark although street lights were burning, and Hollywood Boulevard was all but deserted of traffic with only a few cars passing through the intersection; two men had been detained; defendant had twice failed to comply with the police order to stop; defendant's companion had been detained for the purpose of issuing to him a citation; on the third police order to stop defendant finally turned and approached the officer, and Officer Vanderwal observed defendant's behavior which he thought to be "rather peculiar"; defendant was holding his hands clasped together in front of a bulge in the waistband in the middle of his waist; Officer Vanderwal thought defendant was trying to hide a weapon. It was dark, and any preparatory movements of defendant for possible violence most likely would go unnoticed because of the officers' preoccupation with writing citations for defendant and his companion. Officer Vanderwal articulated sufficient specific facts and circumstances surrounding the detention from which he, "as a reasonably prudent man, could have inferred that defendant was carrying a concealed weapon." (See *People* v. *Superior Court* (*Simon*) (1972) 7 Cal.3d 186, 208 [101 Cal.Rptr. 837, 496 P.2d 1205].) Having found the .25 caliber gun in the black holster in the exact position Officer Vanderwal had seen the bulge, there was probable cause to arrest defendant. (*People* v. *Martin* (1973) 9 Cal.3d 687, 692 [108 Cal.Rptr. 809, 511 P.2d 1161].)

Let the writ of mandate issue directing the superior court to vacate its order of July 11, 1980, granting motion pursuant to section 1538.5, Penal Code, and to substitute therefor order denying said motion.

Spencer, P. J., and Hanson (Thaxton), J., concurred.

A petition for a rehearing was denied December 10, 1980, and the petition of real party in interest for a hearing by the Supreme Court was denied January 7, 1981. Bird, C. J., was of the opinion that the petition should be granted.