Filed 10/7/24  Lee v. Superior Court CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| STEVEN LEE, | |
| Petitioner, | E083577 |
| v. | (Super.Ct.No. FSB23002519) |
| THE SUPERIOR COURT OF SAN BERNARDINO COUNTY, | OPINION |
| Respondent; | |
| THE PEOPLE, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS; petition for writ of mandate.  Cheryl Kersey, Judge

and Ronald M. Christianson, Judge.  (Retired Judge of the San Bernardino Super. Ct.

assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Petition granted.

Thomas W. Sone, Public Defender and Justin M. Ewaniszyk, Deputy Public

Defender for Petitioner.

No appearance for Respondent.

1

Jason Anderson, District Attorney and John A. Slezak, Deputy District Attorney, for Real Party in Interest.

A patdown during a traffic stop requires the officer to have a reasonable belief that the subject was armed and dangerous. An officer who patted down petitioner Steven Lee during a traffic stop testified that he did so without reason to believe Lee was armed and dangerous. Because the officer admittedly had no such belief, we reverse the trial court's order denying Lee's motion to suppress the fruits of the search of his person.

BACKGROUND

A. The Traffic Stop

At 10:18 p.m. on July 26, 2023, two San Bernardino police department officers observed traffic violations that prompted them to activate emergency lights to stop Lee and his two passengers. Lee had failed to yield to an oncoming fire truck and his vehicle lacked a front license plate. Lee pulled his car over and parked at a curb.

Our record contains a video of the stop from Officer Diego Diaz's body camera. The video shows the two minutes and eight seconds from when the officers approached Lee's car through the beginning of the patdown search of Lee's person, and it shows about another 50 seconds after the search began. Our summary of the facts is taken from the video, the transcript of its audio in our record, and the suppression hearing testimony.

Officer Diaz approached the car on foot on the driver's side and dealt with Lee. Officer Sean Breceda approached from the passenger side and dealt with the passengers.

In response to Diaz's requests, Lee opened the car windows and handed his license to Diaz. Diaz asked if the back seat passenger was an adult, and Lee said he was.

Fifty-three seconds into the stop, Lee asked Diaz the purpose of the stop. He then asked Diaz whether he would have complied with traffic laws had he pulled his car over at a certain corner. He suggested that Diaz did not need to order Lee out of the car because no one violated any laws other than the minor traffic infractions. He volunteered that he was not on probation or parole, and that he was insured. Through these interactions, the video shows Lee as calm and non-aggressive; the People do not claim otherwise.

Eighty-eight seconds into the stop, Diaz asked Lee to exit the vehicle. Lee did so while placing his keys in his pocket, and Diaz asked him to take them out. Lee did not immediately do so, and instead calmly (arguably anxiously) said it was his car, and he was driving to his grandmother's house. He suggested to Diaz, "you can write me a ticket."

At the two-minute-eight-second point, Diaz touched Lee on the arm, asked him to turn around, and said, "I'm going to pat you down for any weapons." Seconds later, Diaz removed a cigarette lighter from Lee's pocket, placed it on the car, and repeated that he was "just making sure that [Lee did not] have any weapons." Diaz removed Lee's keys from his pocket and placed them on the car. Lee remained calm and non-aggressive even through these portions of the patdown search.

3

Diaz then found a gun magazine on Lee's person, later found to contain bullets. The video ends with Lee repeating a sentence: "You had no reason to search me. You had no reason to search me."

Later, not on the video in our record, Diaz searched Lee's car and found a gun under the driver seat. The seizures of the gun and magazine led to the charges in this case.

B.   The Suppression Hearing

The People filed a felony information alleging three charges against Lee: possession of a firearm by a felon (Pen. Code, § 29800, subd. (a)(1)), unlawful possession of ammunition (Pen. Code, § 30305, subd. (a)(1)), and obstruction of police officers (Pen. Code, § 148, subd. (a)(1)).

Lee filed an opposed motion to suppress the firearm and ammunition recovered during the search and to dismiss the charges. The trial court heard that motion along with the preliminary hearing.

At the hearing, Officer Diaz testified. On direct examination, he explained that he patted down Lee because "we were going to detain him on the curb line . . . and I didn't want any type of weapon or sharp object to possibly harm myself or Officer Breceda . . . ." He also testified another factor raising safety concerns was that the stop was in a high-crime area with observers around. He testified that defendant's "stuttering," "shaking," being "very sweaty," and "stalling," also contributed to his concerns.

4

During Diaz's cross-examination, Lee's counsel played the video from Diaz's body camera. Thereafter, Diaz agreed that Lee was "cooperative," "polite," and answered questions "Yes, sir" and "No, sir." He admitted that he saw no bulges on Lee's person, nor did he see weapons or ammunition.

Diaz admitted that he had no reason to believe Lee was armed:

"Q. At the time you're patting down Mr. Lee, you have no reason to believe he's armed at that time, right?

"A. At the time, no."

On redirect, the prosecution asked Diaz if he had wanted to do the patdown search for his safety, and he confirmed as much. The prosecution then elicited from Diaz factors that had caused him concern about his safety. These included his inability to see the floorboard of the car where Lee's legs had been, Lee seeming to try to block Diaz from accessing the car, the backseat passenger's refusal to identify himself, and the general fear a police officer "always" has when making traffic stops, "especially in high crime areas." Diaz did not, however, articulate that he believed he had any reason to suspect Lee had a weapon on his person.

In arguing to the court presiding at the preliminary hearing, Lee's counsel stated that the "sole issue" was the patdown, which requires a "reasonable belief that Mr. Lee is armed and dangerous." Because Diaz "said specifically he had no reason to believe that my client was armed. . . . a pat-down is illegal." The People argued that under all the circumstances, "there was a potential that the defendant was armed and dangerous."

5

The trial court denied the motion to suppress. Based on its viewing of the body camera video of the stop, the court found Lee appeared "angry" and "offended by being stopped for the vehicle license violation." The court characterized Lee's behavior as "argumentative and confrontational," despite Diaz's testimony that Lee had been cooperative and polite. The court also emphasized Diaz's safety concerns, raised by the neighborhood and the place where Lee pulled over, Diaz's inability to see into the vehicle because of window tint, and the backseat passenger's behavior.

Later, with the suppression motion renewed, the trial court judge denied the motion, finding "substantial evidence in the record" to support the judge's conclusion at the preliminary hearing and stating that "a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger."

DISCUSSION

Lee seeks a writ of mandate to order the trial court to enter a new order granting his motion to suppress. He argues that a police officer cannot pat him down for weapons during a traffic stop where the officer does not believe Lee is armed and dangerous. We agree.

Under the Fourth Amendment to the United States Constitution, the traffic stop itself in this case was proper. Officers need not have probable cause for an investigatory stop of a citizen but only reasonable suspicion "that criminal activity [is] afoot." (*Terry v. Ohio* (1968) 392 U.S. 1, 30 (*Terry*).) In this case, Lee was properly stopped because

6

the officers observed him failing to stop for an emergency vehicle and observed his car lacked a front license plate.

Officers also properly ordered Lee out of his car.  Once there is a proper *Terry* stop, "police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures." (*Pennsylvania v. Mimms* (1977) 434 U.S. 106, 111, fn. 6.)

To then conduct a patdown for weapons, though, "the police officer must reasonably suspect that the person stopped is armed and dangerous." (*Arizona v. Johnson* (2009) 555 U.S. 323, 326-327; *People v. McDaniel* (2021) 12 Cal.5th 97, 130; *Terry*, *supra*, 392 U.S. at p. 30 ["reasonable grounds to believe that petitioner was armed and dangerous"]; *Ybarra v. Illinois* (1979) 444 U.S. 85, 92-93 [Supreme Court has "invariably held" that "a reasonable belief that [a suspect] was armed and presently dangerous . . . must form the predicate to a patdown of a person for weapons"].)

A reasonable belief that a suspect was armed and dangerous requires objective facts rather than a hunch.  The Constitution allows "a limited patdown for weapons where a reasonably prudent officer would be warranted in the belief, based on specific and articulable facts, and not on a mere inchoate and unparticularized suspicion or hunch, that he is dealing with an armed and dangerous individual." (*Maryland v. Buie* (1990) 494 U.S. 325, 332 [cleaned up]; see *In re Jeremiah S.* (2019) 41 Cal.App.5th 299, 311 [reversing order denying motion to suppress where there were no specific and articulable

7

facts supporting a reasonable suspicion that the defendant was armed and dangerous];
*People v. Dickey* (1994) 21 Cal.App.4th 952, 956-957.)

The reason the law permits a patdown is to protect the officers by allowing them to "neutralize the threat of harm" from an armed and dangerous suspect. (*Terry*, *supra*, 392 U.S. at p. 30; see, e.g., *Minnesota v. Dickerson* (1993) 508 U.S. 366, 373 [search of person who may be armed and presently dangerous is to determine whether the person is in fact carrying a weapon].) The law requires articulable facts showing the suspect to be armed and dangerous because a patdown search is an additional, though "relatively minor," intrusion on privacy. (*People v. Scott* (1976) 16 Cal.3d 242, 249.) Consequently, where there is no probable cause for an arrest, absent an "articulable belief" that the suspect is armed and dangerous, a patdown for weapons is "an impermissible intrusion." (*Ibid.*)

In this case, Officer Diaz testified at the suppression hearing that when he performed the patdown search, he had no reason to believe Lee was armed. This establishes that the search was illegal. Because the touchstone for a patdown search is whether an officer had a "reasonable belief or suspicion that the suspect is armed," such a search is unlawful if the officer "had no such belief or suspicion." (*People v. Sandoval* (2008) 163 Cal.App.4th 205, 213; see *Ramirez v. City of Buena Park* (9th Cir. 2009) 560 F.3d 1012, 1022, second italics added ["facts merely establishing that *if* an individual were armed he would be dangerous are insufficient if there was no reason to believe that the individual actually *was* armed"].)

8

In granting Lee's petition, then, we are applying well-established law. As one panel put it: "The basic rule is agreed upon by all: in order to patsearch a suspect, an officer must have a reasonable suspicion that he is presently armed and dangerous." (*People v. Osborne* (2009) 175 Cal.App.4th 1052, 1059.) Here, the question is not whether the officer's suspicion was reasonable, which can present a difficult question. Rather, the officer here testified that he did not even have a suspicion that Lee was armed, whether reasonable or not. This made the patdown improper.

Had Officer Diaz articulated that specific conduct shown on the video provided him with suspicion, we might be required to defer to his judgment on the scene. In testifying, though, Officer Diaz did not identify any footage that showed a basis for him to have reasonable suspicion that Lee was armed at the time the patdown began. Without connecting Lee's conduct to the video, Diaz referred in his direct testimony to some general behavior by Lee ("stuttering," "shaking," being "very sweaty," and "stalling") that contributed to his safety concerns. Diaz did not claim that those behaviors prompted him to believe that Lee was armed. And after being shown the video, Diaz agreed that Lee was "cooperative," and "polite," and provided him with no reason to believe Lee was armed.

In their return, the People argue that the legal test for a patdown is "not limited to a belief that the subject is armed," citing *Michigan v. Long* (1983) 463 U.S. 1032, 1049 (*Long*).

*Long*, like all the other authority cited above, requires a reasonable belief that the defendant is "armed and dangerous" for a patdown.  The first sentence of *Long* characterized *Terry v. Ohio*'s search test as requiring "an articulable suspicion that an individual is armed and dangerous." (*Long*, *supra*, 463 U.S. at p. 1034.)  *Long* held officers with such a belief could search compartments of a vehicle, not merely the person of a suspect. (*Id*. at p. 1035.)  But the case did not change the *Terry* "armed and dangerous" standard for a patdown search.  It simply extended that standard to passenger compartments where there was reasonable suspicion that a person was dangerous and a weapon might be found there. (See, e.g., *Knowles v. Iowa* (1998) 525 U.S. 113, 118 [*Terry* authorized patdowns upon a suspicion the suspect was "armed and dangerous" and *Long* allowed a "'*Terry* patdown'" of a passenger compartment].)

In *Long*, after a stop where the officers observed a hunting knife on the suspect's car floorboard and performed a *Terry* patdown outside a vehicle, the officers shined a flashlight into the vehicle to search for weapons. (*Long*, *supra*, 463 U.S. at p. 1036.)  The Supreme Court held that the officers acted constitutionally in using the flashlight because they had a "reasonable belief that Long posed a danger if he were permitted to reenter his vehicle." (*Id*. at p. 1050.)  In that circumstance—*after* a patdown governed by *Terry*— the suspect would not be "armed" on his person, because what was at issue was the flashlight search of a car compartment.  The People are thus mistaken to claim that *Long* eliminated the requirement of a reasonable belief that the suspect is "armed" for a patdown to occur.

10

The Court of Appeal cases the People rely on cannot alter the United States Supreme Court's constitutional minimum, and they do not. They refer to the officers' belief that they may face danger but do not depart from the *Terry* standard. (See *People v. Avila* (1997) 58 Cal.App.4th 1069, 1074 [articulating the "armed and dangerous" test for a patdown, and finding that the officer reasonably believed his safety was in danger where, among other things, he saw a metal object near the defendant's hand]; *People v. Superior Court (Brown)* (1980) 111 Cal.App.3d 948, 955-956 [applying the requirement of specific facts or circumstances giving reasonable grounds to believe "that defendant is armed" where officer testified that "he thought defendant might be armed" due to a bulge and the way he was holding his hands].)

We do not disagree with the People's assertions that the officers had safety reasons to perform a patdown of Lee. In a traffic stop, officers have a weighty interest in their safety, and may reasonably exercise command over the situation to ensure it. (See *People v. McDaniel*, *supra*, 12 Cal.5th at pp. 129-130.) Yet, taken alone, an officer safety justification would allow a patdown in virtually any stop, or in any stop in certain common circumstances, such as a nighttime stop in a high-crime area. As the trial court did in denying the suppression motion, the People emphasize those circumstances, including that other persons were nearby. The time and location of a stop are relevant to the danger that an officer might face, yet they cannot alone establish reasonable suspicion for a patdown. (*In re H.H.* (2009) 174 Cal.App.4th 653, 660; see also *People v. Flores* (2024) 15 Cal.5th 1032, 1045-1046 [being in a known narcotics area does not alone

11

suffice to warrant *Terry* stop].)  The constitutional test focuses on whether the officer has articulable facts supporting reasonable suspicion that the suspect is armed and dangerous. If the officers lack reasonable suspicion for a patdown, they must handle the stop in a different reasonable manner that protects their safety, such as (for instance) asking the suspects to sit with their hands visible under the watch of one of the officers.  (See, e.g., *People v. McDaniel*, *supra*, 12 Cal.5th at pp. 130-131 [actions to protect officer safety during records check, before officers viewed a pocket bulge that warranted patdown search]; *Rodriguez v. United States* (2015) 575 U.S. 348, 356 [officers may take "negligibly burdensome precautions" during traffic stop to complete the mission safely].)

For the reasons provided above, the ammunition and firearm seized as a result of the patdown search must be suppressed.  We will leave it to the trial court to determine if some or all of the charges are to be dismissed.

DISPOSITION

The petition for writ of mandate is granted.  Let a peremptory writ of mandate issue directing the respondent superior court to (1) vacate its order denying Lee's motion to suppress evidence and (2) enter a new order granting the motion.  This order alone does not require dismissing the case.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL_____<br>J.

We concur:

FIELDS_____
Acting P. J.

MENETREZ_____
J.

13