Filed 11/5/24  P. v. Granados CA4/3

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G063045 |
| v. | (Super. Ct. No. 21CF0446) |
| CESAR ABARCA GRANADOS, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Elizabeth G. Macias and Andre Manssourian, Judges. Affirmed, as modified.

Lara Gressley, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Steve

Oetting and Paige B. Hazard, Deputy Attorneys General, for Plaintiff and Respondent.

*     *     *

Cesar Abarca Granados pleaded guilty to multiple criminal counts. On appeal, he challenges the trial court's denial of his motion to suppress evidence seized from his vehicle. We conclude the court's factual findings were supported by substantial evidence and the seizure of evidence did not violate Granados's constitutional rights. We affirm, with directions to the trial court to apply Granados's excess presentence custody credits to his period of parole.

## PROCEDURAL BACKGROUND

Granados was charged in an information with possession of a controlled substance while armed with a firearm (Health & Saf. Code, § 11370.1, subd. (a) [count 1]), resisting a police officer by means of threats and violence (Pen. Code, § 69 [count 2]), possession of a firearm by a convicted felon (*id.*, § 29800, subd. (a)(1) [count 3]), possession of a concealed firearm in a vehicle (*id.*, § 25400, subds. (a)(1), (c)(1) [count 4]), possession of ammunition as a prohibited person (*id.*, § 30305, subd. (a)(1) [count 5]), resisting a police officer (*id.*, § 148, subd. (a)(1) [count 6]), and possession of drug paraphernalia (Health & Saf. Code, § 11364, subd. (a) [count 7]). The information alleged Granados had previously been convicted of a serious and violent felony. (Pen. Code, §§ 667, subd. (d), (e)(1), 1170.12, subd. (b), (c)(1).) As to count 2, it was alleged Granados had personally inflicted great bodily injury during the commission of the offense. (*Id.*, § 12022.7, subd. (a).)

Pursuant to Penal Code section 1538.5, Granados filed a motion to suppress the evidence seized after his detention, arrest, and vehicle search.

2

Following briefing and an evidentiary hearing, the trial court denied the motion.

As part of a negotiated plea agreement, Granados pled guilty to all charges, admitted the prior felony, and entered guilty pleas in five separate misdemeanor cases. Pursuant to the plea agreement, the trial court sentenced Granados to 16 months in prison: the low term of 16 months on count 3, and the low terms of two years, 16 months, and 16 months on counts 1, 4, and 5, respectively, all stayed. (Pen. Code, § 654.)[1] The court suspended imposition of sentence on counts 2, 6, and 7 and awarded Granados 502 days of presentence custody credit. As to the separate misdemeanor cases, the court imposed sentences to run concurrently. Granados filed a notice of appeal.

DISCUSSION

I.

MOTION TO SUPPRESS

*A.  Standard of Review*

On appeal from a ruling on a motion to suppress evidence, we defer to the trial court's factual findings, so long as they are supported by substantial evidence. (*People v. Flores* (2024) 15 Cal.5th 1032, 1043.) We independently review whether, on those facts, the seizure violated Granados's rights under the Fourth Amendment to the United States Constitution. (*Id.* at p. 1043.)

---

[1] The minute order erroneously states that count 4 was the primary count for sentencing purposes. This discrepancy does not affect any issues on appeal.

*B. Factual Background*[2]

Detectives Buchanan and Sanchez of the Santa Ana Police Department were on duty in a marked patrol car at about 8:00 p.m. on February 5, 2021. They saw a black, four-door Nissan driving northbound on Harbor Boulevard; it had heavy tinting on the front windows and did not appear to have a front license plate. The officers intended to conduct a traffic stop for these violations, but the vehicle turned off Harbor Boulevard and out of their sight. When they turned onto a residential street, the officers saw the vehicle, parked and unoccupied. Unable to effect the intended traffic stop, Sanchez ran a records check on the vehicle's license plate, which showed it was registered to an auto body shop located outside Orange County.

At about 9:20 p.m. that same evening, the officers saw the same Nissan parked at a motel on Harbor Boulevard near Trask Avenue. They parked directly behind the vehicle and illuminated it with their spotlight, but did not activate the patrol car's light bar. Buchanan approached the vehicle with his weapon drawn and saw Granados in the driver's seat and another male in the front passenger seat. Buchanan motioned to Granados to roll down his window, which Granados did only after being asked several times. Buchanan asked Granados if he was on probation or parole. At that point, Buchanan wanted to determine who owned the vehicle, see if the vehicle was trespassing on the motel property, and address the earlier traffic violations. Granados offered to show Buchanan his license, but Buchanan declined.

Granados appeared nervous and evasive, and Buchanan saw an open beer container in the center console. Buchanan told Granados to place

_____

[2] The following facts are taken from the transcript of the hearing on the motion to suppress evidence.

4

his hands on the steering wheel. He described Granados as being "in and out of compliance and noncompliance" with that command, meaning he "would continually throughout the conversation take his hands off the steering wheel, make furtive movements, sudden movements towards his waistband or other locations within the vehicle." After asking Granados multiple times to comply, Buchanan told Granados to place his right hand on his head, so Buchanan could safely help him out of his vehicle and conduct a pat-down search for weapons.[3] Granados did not comply, continued to act nervous and evasive, and became verbally combative and argumentative.

Sanchez escorted the passenger from the vehicle and informed Buchanan he had located drug paraphernalia on the passenger. Sergeant Lizardi, who had arrived with other officers to assist in the encounter with Granados, spoke with Granados in an attempt to gain his compliance. Eventually, the officers forcibly removed Granados from the vehicle through the passenger side door. After Granados was handcuffed and placed in the backseat of a patrol car, Buchanan returned to the Nissan and noticed "a clear glass pipe with a bulbous end containing an off-white crystalline substance on the front passenger seat." After the pipe was discovered, a more thorough search revealed a loaded firearm in a plastic grocery bag, located in the pocket behind the driver's seat. A bindle containing an off-white crystalline substance, which Buchanan believed to be methamphetamine, was found in plain view on the driver's seat.

---

[3] Buchanan believed Granados might have weapons due to his "furtive movements and his nervousness. He is tattooed. It is a high-crime area, rather late in the evening." Buchanan also believed Granados's behavior, as well as his fidgetiness and lack of attention, might indicate he was under the influence of methamphetamine.

Buchanan testified the total length of the encounter, from the time he first asked Granados to roll down his window until Granados was placed in the back of the patrol car, was between 10 and 15 minutes. (The transcript of Buchanan's body camera video indicates the total elapsed time was 13 minutes.) This was longer than the usual traffic stop "[d]ue to the uncooperativeness of the defendant." Buchanan never asked to see Granados's driver's license or registration; he explained Granados's furtive movements caused him to worry Granados might have been armed, and Buchanan did not want Granados to be reaching around his person or within the vehicle until Buchanan could ensure his own safety. Buchanan placed Granados under arrest for resisting and delaying the investigation.

The court made the following findings and ruling:

"I will say that I do believe that Mr. Granados was detained upon law enforcement parking directly behind him, having the spotlight, the headlight blocking him from any ability to be able to put his car in reverse and simply leave the parking lot at Motel 6.

"That said, the officer made it clear that the tint in the vehicle was such that it was difficult to determine who was in the vehicle, what could potentially be happening within this vehicle, which is a vehicle parked at Motel 6 where the officer testified is a high-crime area. So when the officer approaches with his flashlight and with his gun unholstered and proceeds to see individuals inside the vehicle and issue commands, the Court does note that the officer was no longer pointing the gun at Mr. Granados at the time that he was having this exchange with Mr. Granados.

"The officer did have grounds pursuant to [*Pennsylvania v. Mimms* (1977) 434 U.S. 106] to have Mr. Granados step outside of the vehicle. Mr. Granados, however, given his actions, persisted in moving his

6

right hand towards the center console. And while [Granados's counsel] is correct that Mr. Granados did not have a gun on him, the officer did not know that at the time. And it was for purposes of officer safety that the officer was seeking to have Mr. Granados, one, put his hands on the steering wheel with the front passenger also placing his hands on the dashboard. And Mr. Granados not only didn't place his hands on the steering wheel, he continued to move them away from the steering wheel. He also failed to put his hands over his head as requested by the officer.

"What, counsel is correct, started as a license plate and tinted windows and certainly a suspicion based on the fact that there was an inability to contact the vehicle earlier on in the day, perhaps this would have ended different had there been the contact earlier on in the day. But it was at night, in a high-crime area with tinted windows and an inability to look inside the vehicle, with Mr. Granados not cooperating.

"And I certainly understand that perhaps Mr. Granados was driven by the initial conduct by the officer. But the fact of the matter is that his words could have perhaps not matched his physical actions. If his hands had been on the steering wheel while refusing or while demanding information from the officer, perhaps there would have been a different result. But that wasn't the case. It was not only words by Mr. Granados, but actions by Mr. Granados that ultimately resulted in the officer taking the action that he ultimately did with the other officers.

"The Court does find that there was a reasonable suspicion given the plate and the tinted window, and that that reasonable suspicion ultimately led to probable cause given the actions by Mr. Granados. Therefore, the Court does find that the motion that has been filed to suppress the evidence found within the vehicle is denied."

7

*C. Analysis*

A police officer may detain a person if he or she has a reasonable suspicion of their involvement in unlawful activity. (*People v. Hernandez* (2008) 45 Cal.4th 295, 299.) A traffic stop is a detention that may last no longer than is necessary to address the violation warranting the stop. (*Rodriguez v. United States* (2015) 575 U.S. 348, 354.) In addition to issuing a citation, a traffic stop may include "inquiries involv[ing] checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance," as long as these inquiries do not unreasonably prolong the traffic stop. (*Id.* at p. 355.)

If the police fail to investigate the reasons for the stop, but instead begin searching for other illegal activity, the detention initially supported by reasonable suspicion may become unlawful. (*People v. Gyorgy* (2023) 93 Cal.App.5th 659 (*Gyorgy*).) In *Gyorgy*, the police pulled Gyorgy over for making an unsafe lane change. (*Id.* at p. 664.) An undercover officer had alerted the arresting officer that Gyorgy's truck had acted suspiciously and had been seen at a local motel known for drug trafficking. (*Ibid.*) The arresting officer asked for Gyorgy's driver's license and if the vehicle was his. (*Ibid.*) For the next four or five minutes, the officer asked about Gyorgy's probation status, whether he was a narcotics or sex registrant, and if he had sharp objects, drugs, or weapons in the vehicle. (*Id.* at p. 664.) The officer then asked Gyorgy to step out of the vehicle and patted him down for weapons. (*Id.* at p. 665.) Only then did the officer explain he had pulled Gyorgy over for making an unsafe lane change. (*Ibid.*) Seven and one-half minutes into the stop, the officer told Gyorgy he was going to take his police dog around Gyorgy's car, and had the dog sniff the exterior of the vehicle. (*Id.*

8

at pp. 665–666.) Almost 12 minutes after the stop was initiated, the dog alerted the officer to an area on the driver's side door. (*Id.* at p. 666.) The police then searched the vehicle's interior and found drugs, drug paraphernalia, an unloaded firearm, and ammunition. (*Ibid.*)

The appellate court reversed the trial court's denial of a motion to suppress: "What began as a lawful traffic stop violated the Fourth Amendment's shield against unreasonable seizures when the officers detoured from the traffic stop's mission by conducting the dog sniff and inquiring into matters unrelated to the traffic violation and these detours prolonged the stop "beyond the time reasonably required to complete th[e] mission" of issuing a ticket for the [traffic] violation.'" (*Gyorgy, supra*, 93 Cal.App.5th at p. 663.)

A reasonable suspicion that the person the police are dealing with is armed with a weapon and may be dangerous justifies a patdown search. (*Terry v. Ohio* (1968) 392 U.S. 1, 30.) "[W]e evaluate the factors that *were* present, as part of the whole picture, to decide whether they gave rise to reasonable suspicion." (*People v. Esparza* (2023) 95 Cal.App.5th 1084, 1091.) A person who acts suspiciously during a traffic stop, causing the officer to fear for his or her safety, may be searched. (*People v. Superior Court (Brown)* (1980) 111 Cal.App.3d 948, 954–956.) And an individual may be asked to step out of a vehicle to ensure the safety of a police officer. (*Pennsylvania v. Mimms, supra*, 434 U.S. at pp. 108–112.)

Considering all of the circumstances surrounding Granados's detention, we conclude the detention was not unreasonably extended by the police. The police had grounds to initiate a detention based on the vehicle's heavily tinted windows and lack of a front license plate. The vehicle was parked in a high crime area at night. The police parked behind Granados's

vehicle, preventing it from moving, placed a spotlight on the vehicle, and approached it with weapons drawn. They could tell there were two individuals in the vehicle.

To ensure their own safety, the police asked Granados, in turn, to roll down his window, place his hands on the steering wheel, and place one hand on his head. Granados failed to follow directions, was nervous and evasive, and made sudden movements toward his waistband and toward other areas in the vehicle. The presence of an open beer can in the vehicle's center console, as well as Granados's speech and behavior, caused the police to reasonably believe he was under the influence of drugs and/or alcohol.

The police had grounds to require Granados to step out of the vehicle to ensure officer safety. In doing so, they observed drugs and drug paraphernalia in plain sight, giving them probable cause to conduct a further search, during which the firearm was located.

The search and seizure did not violate the Fourth Amendment. The trial court correctly denied the motion to suppress.

## II.

### PRESENTENCE CUSTODY CREDITS

At sentencing, the trial court awarded Granados 502 days of presentence custody credits, which exceeded his 16-month sentence by 15 days. As the Attorney General concedes, these credits must be applied against Granados's parole period. (*People v. Morales* (2016) 63 Cal.4th 399, 405.) We will direct the trial court to modify the judgment to apply the excess presentence custody credits against Granados's period of parole.

10

## DISPOSITION

The judgment is modified to apply Granados's excess presentence custody credits to his period of parole. As so modified, the judgment is affirmed.


GOODING, J.

WE CONCUR:


GOETHALS, ACTING P. J.


MOTOIKE, J.

11